HANSEN. v. THE AMERICAN INS. CO.

1. **Written Instrument**: LOSS OF: SECONDARY EVIDENCE. The burden of showing the loss of a written instrument is upon the party who seeks to introduce secondary evidence thereof, and before secondary evidence is admissible, it should clearly appear that proper efforts had been made to find the written instrument. A thing cannot be said to be lost or mislaid for which no search has been made.

2. **Insurance**: PROOFS OF LOSS: FALSE STATEMENTS. Where the agent of the insurance company fully knew the purpose for which a certain building was used and occupied at the time it was destroyed by fire, this would not excuse the insured for knowingly making false statements, as to such use and occupation, in the proofs of loss.

3. **New Trial**: INSTRUCTIONS: JURY. Where the jury disregard, or fail to follow the instructions of the court, upon a point concerning which there was no conflict in the testimony, a new trial should be granted.

*Appeal from Dubuque District Court.*

FRIDAY, MARCH 24.

ACTION on a policy against loss or damage by fire. The answer consisted of a general denial and certain special defenses, which are sufficiently indicated in the opinion. Trial by jury; verdict and judgment for the plaintiff, and the defendant appeals.

*J. C. Longueville* and *Neff & Stearns*, for appellant.

*J. H. Shields*, for appellee.

SEEVERS, CH. J.—I. The policy of insurance is based on a written application signed by the plaintiff. It is stated therein she owned the fee simple title to the premises insured. It is conceded she did not have such title but that the same was in one Langworthy. It is claimed, however, the agent of the defendant who filled up the application had full knowledge as to the condition of the title

1. WRITTEN instrument: loss of: secondary evidence.

and that the knowledge of the agent was notice to the company. Conceding this to be so, and without considering its legal effect, we think there is no doubt it devolved on the plaintiff to establish she had an insurable interest. This she undertook to do, and when on the stand as a witness testified she purchased the property insured of Langworthy, and that he gave her a writing stating the terms and conditions of the purchase. Thereupon occurred the following: " Ques. Where is that contract? Ans. Oh! I don't know. Ques. Where is it; can you find it? Ans. No; not now. Ques. It is lost, is it? Ans. Yes, sir; it is lost? Ques. Have you looked for it, and can't find it? Ans. No. Ques. That is, can't find it? Ans. Mr. Langworthy was the last time here and he said I paid him some money."

As we understand, the plaintiff testified she had not made any search for the writing and failed to give a responsive answer to the last question.

Mr. Langworthy was introduced as a witness by the plaintiff and asked to state the terms and conditions of the sale of the property. To this the defendant objected, on the ground that the proper foundation had not been laid for the introduction of secondary evidence. The objection was overruled and the defendant excepted. Whereupon the witness proceeded to state the terms and conditions of the sale which were contained in the writing. Such evidence tended to show the plaintiff had an insurable interest in the property described in the policy. In this, we think, there was error. The rule is well established that before evidence can be introduced, showing the contents of a written instrument, it must appear such instrument, for some sufficient reason, cannot be produced. A thing cannot be said to be lost or mislaid for which no search has been made. *Howe Machine Co. v. Stiles*, 53 Iowa, 424.

It is said the plaintiff is a German, understands the English language imperfectly, and that by the negative answer to the question, " Have you looked for it, and can't find it?" She

meant she could not find the written contract. If this is so, why did she fail to respond to the direct question to that effect put by her counsel. He must have understood, to say the least, it was left in great doubt whether a search for the paper had been made. We do not think the ingenious theory of counsel should be permitted to prevail. The burden was on the plaintiff to show the loss of the written contract and the evidence should be reasonably clear and not susceptible of any other construction than that proper efforts had been made to find the written instrument.

II. We are embarassed in the consideration of the other errors assigned, because the point is made by the appellee that the abstract fails to state all the evidence is contained therein, and the inclination we entertain the point is well taken. In view, however, of a re-trial, and upon the supposition all the evidence is before us, we deem it proper to say the policy provides that "any fraud or attempt at fraud, or false swearing on the part of the assured, shall cause a forfeiture of all claim under the policy." The plaintiff insisted the proofs of loss were sworn to by her, and it was there stated the building insured and destroyed or damaged, was " occupied for the following purpose, to-wit: for dwelling-house purposes by one Lullig and Khenschrot, and for no other purposes whatever." The court instructed the jury if the plaintiff knowingly m .de any false statement in making proofs of loss, with intent to defraud the defendant, she could not recover. When on the stand as a witness the plaintiff testified the persons above named occupied the house at the time of the fire, and that she knew " Khenschrot had a little grocery, and that he was selling whisky, beer, and cigars there " To our minds there is no escape from the conclusion the plaintiff knowingly made a false statement in the proofs of loss. If we understand counsel for the plaintiff he does not claim the premises were not occupied as a saloon, and that the plaintiff so knew, but his point is that such an occupation

2. INSURANCE: proof of loss: false statement.

was known to the agent of the defendant, and that the latter was bound thereby. This may be so. Nevertheless, the plaintiff should have stated the facts correctly in the proofs of loss. The jury, under the instructions of the court, should have found for the defendant, and, therefore, a new trial should have been granted.

III. The court instructed the jury that the occupation of the building as a saloon increased the risk and avoided the pol-

3. NEW TRIAL: icy, unless such occupation was waived by some
instructions:
jury. act done by some one authorized to waive the conditions of the policy. That the receiving of a part of the premium coming due after the change in the occupancy would be a waiver, but receiving such premium at the time the policy issued would not be a waiver. There was but a single payment of a part of the premium, and that was made after the policy issued. The court further instructed the jury if such a payment was made on a note, which was the individual property of Beck, the agent of the defendant, then the collection thereof would not amount to such waiver. The only evidence tending to show to whom the money so paid belonged was that of Beck, and he testified it was his individual property. Had the jury followed the instructions their verdict must have been for the defendant, and for this reason a new trial should have been granted.

REVERSED.