JOS. L. LEVITT, Appellant, v. LOUIS BRENDEL, et al.

**Sales:** NOVATION: CONSIDERATION. Where one party, in consideration 1 of the transfer of property to him, assumed the obligation of the other and gave the creditor his note therefore, which was accepted and the original debtor released, there was a contract of novation which was sufficient consideration for the transfer of the property.

**Same:** FRAUDULENT CONVEYANCES: PARENT AND CHILD: EVIDENCE. 2 While a transaction as between father and son, which operates to defeat creditors, will be closely scrutinized, mere insufficiency of consideration will not render it fraudulent. In this action to foreclose a mortgage given by the father on property claimed to have been purchased by the son the evidence fails to show fraud.

**Same:** POSSESSION OF PERSONALTY: OWNERSHIP: STATUTE. Actual 3 possession of personal property is *prima facie* notice of ownership

and of the rights of the possessor; and where a purchaser is in possession of the property the statute declaring a sale invalid as against existing creditors, unless a written bill of sale was executed and recorded, has no application.

Same: ESTOPPEL. Where a father and son were engaged in farming on equal shares, the father furnishing the farm and stock and the son doing the work and occupying the farm alone, failure of the son to deny the father's ownership of the stock, although the son in fact owned one-half of it, did not estop him from asserting his interest as against the mortgagee of the father, where the son was in sole possession of the property and it was not shown that he knew of the father's statements; and especially where it did not appear that the mortgagee relied upon his conduct.

*Appeal from Polk District Court.*—HON. CHAS. S. BRADSHAW, Judge.

SATURDAY, NOVEMBER 22, 1913.

SUIT against Louis Brendel on promissory note and foreclosure of chattel mortgage securing payment thereof. James C. Brendel answered and by way of cross-petition alleged that he had purchased the property covered by the mortgage prior to the execution of the mortgage and prayed that he be adjudged the owner thereof. The petition was dismissed and the property awarded to James C. Brendel. The plaintiff appeals.—*Affirmed.*

*Fred F. Keithley,* for appellant.

*Dale & Harvison,* for appellees.

LADD, J.—On December 29, 1910, Louis Brendel borrowed $330 of the plaintiff, giving his promissory note therefor, and to secure same executed a chattel mortgage covering six mares and two cows. Foreclosure of this mortgage is the purpose of this suit. James C. Brendel, son of Louis, by cross-petition alleged that prior thereto and about December 15, 1910, he had purchased the interest of Louis in said stock and

prayed that he be adjudged owner thereof.  The plaintiff in reply averred that the sale by Louis to James, if any, was fraudulent, that James was estopped from setting up any claim to the property, and that plaintiff in taking said mortgage was an innocent purchaser and protected by the recording act.

It appeared from the undisputed evidence that James moved on his father's farm near Polk City in February, 1906, under an oral arrangement that each should furnish one-half of the personal property and share equally the profits, his "work on the farm was pitted against the farm," and he was to work and handle the stock, and when Louis had received enough above expenses to pay him $6,500, James was to have the place.  The farm consisted of one hundred and fifty-six and one-half acres, and all the proceeds save James' living expenses and those of his family were turned over to his father.  The latter purchased the live stock, giving his own note therefor when not paying cash, and paid for it out of the returns from the farm.  Accurate accounts do not appear to have been kept, for James testified that he had no account for three years, that proceeds of sales for 1909 were something over $3,600 and over $2,300 in 1910.  After the sales in 1910, stock and tools worth $2,700 or $2,800 remained on the place. On Sunday, December 11th of that year, Conrad Hug called on James and inquired when his father would be out to the farm and, after some talk, said that Louis Brendel owed him two notes, one for $360 and the other for $500 with interest, and, according to the testimony of James, his father had said he owed nothing to the neighbors about Polk City, and he came to Des Moines to see his father two days later, who at first insisted he owed no one, but finally recalled the notes to Hug, and proposed to Louis: "I'll tell you what I'll do to fix that up; you give a note in full and borrow the money, and I will transfer my undivided interest in the personal property on that farm, and that includes horses and hogs, cattle and implements, and I will give you a bill of sale, and

I says, 'Will you do that?' and he says, 'I will,' and I says,
'You better do that.' It was getting pretty near train time,
and he says, 'You go home, and I will have that drawn up to-
morrow and send it to you,' and I went home thinking he
would send the bill of sale." James saw Hug and told him
what his father had said, and they arranged to meet at the
Polk City Bank the next day, when he gave his note for the
amount owing Hug by his father, and Hug indorsed it over
to the bank, which credited Hug with such amount. Hug
confirmed the testimony of James in so far as it related to
him. His father did not send the bill of sale, but, on Decem-
ber 16th, a power of attorney instead, which he later said he
thought would do as well.

1. SALES: nova-
tion: consid-
eration.

I.    James had fulfilled his part of the
agreement, and the sale was consummated.
The novation of parties—that is, the execu-
tion of the note by James to Hug in place of that of his father
—was sufficient consideration. *Foster v. Paine,* 63 Iowa, 85;
*Lester v. Bowman,* 39 Iowa, 611.

And there is no ground for the contention that there
was no sale. James knew nothing of plaintiff's mortgages
until more than a month later, after they were recorded, and

2. SAME: fraudu-
lent convey-
ances: parent
and child: evi-
dence.

was not shown to have been aware of other ob-
ligations of his father. It may be that Louis
Brendel, in selling to his son, entertained the
purpose of hindering, delaying, or defrauding
his creditors other than Hug; but, if so, there is no evidence
that his son, James C. Brendel, participated therein, or was
put on inquiry concerning his fraudulent purpose. The
discrepancy in the amount paid and the value of Louis' one-
half interest was not alone enough to stamp the transaction
as fraudulent, and James does not appear to have been re-
sponsible for Louis' failure to send the bill of sale. From
the circumstance that he sent a power of attorney instead,
saying he thought it would do as well, it cannot be inferred
that this was to enable James to renew the note of Hug, nor

is this sufficient alone to justify the rejection of the testimony of James concerning the sale. Though dealings of this kind between father and son are to be scrutinized cautiously, we are agreed that the evidence proved a sale and was insufficient to warrant a finding that such sale was fraudulent.

II. It will be noted that, though Louis Brendel owned the farm, his son, James, was in its actual occupancy. He was neither a tenant nor employee of Louis. Their arrange-

3. SAME: posses-
sion of per-
sonalty: own-
ership: statute.

ment was in the nature of a joint venture in which the son pitted his labor against the father's farm and they were to divide the profits. The son was in the actual possession of the personal property, while the father resided continuously in the city of Des Moines. The possession of James was *prima facie* notice of ownership and of his rights in the property. *Suiter v. Turner*, 10 Iowa, 517, 523.

As then Louis Brendel was not in actual possession, section 2906 of Code has no application, even though there was no change of possession.

III. The evidence does not sustain the plea of estoppel. Several persons testified that Louis Brendel had told two or three persons that he owned all the property on the farm,

4. SAME: estoppel.

but James was not shown to have been aware of this. He did know, however, that Louis had given his individual notes for stock bought at sales and that the proceeds of the farm were turned over to him. This last was in pursuance of their agreement, and, as James remitted the proceeds of sales, he must have done the selling. These circumstances, when considered in connection with the actual possession of James, must be regarded as insufficient to warrant the conclusion that James, with knowledge of Louis having held himself out as owner of the personal property, acquiesced therein, and thereby misled those extending him credit to believe he owned the stock. In any event, plaintiff does not claim to have been so misled, and therefore James C. Brendel is not estopped from asserting his own ownership.

The court rightly awarded him the property, and its judgment is *Affirmed*.

WEAVER, C. J., and EVANS and PRESTON, JJ., concur.