SWANSON AUTOMOBILE COMPANY, Appellee, v. E. B. STONE et al., Appellants.

PARTIES:  Use of Trade Name.  One may lawfully adopt a trade name under which to conduct his business, and, so long as it is not made to cover fraud, he may be sued by such designation.

EVIDENCE:  Best and Secondary—Insufficient Showing of Due Dil-igence.  That a witness thinks certain papers are lost, but is not prepared to say that a thorough search of his office may

not result in their discovery, is insufficient foundation for the introduction of parol proof of their contents, as he must show that he has, in good faith, exhausted, in a reasonable degree, the sources of information and means of discovery which would naturally be suggested and accessible to him.

**EVIDENCE:** Opinion Evidence—Conclusions—Contents of Lost Papers. Testimony that certain papers, claimed to have been lost, constituted assignment of judgment to plaintiff, was merely an expression of the legal opinion of the witness, based upon his reading or knowledge of the language of the instrument, and he should have given the language of the writings, in terms or in substance, and left to the court to determine whether they were assignments of the judgment.

**ATTORNEY AND CLIENT:** Authority—Assignment of Judgment. In the absence of special authority from the client, an attorney cannot validly assign a judgment in favor of the client.

**EVIDENCE:** Opinion Evidence—Conclusion—Authority of Attorney to Assign Judgment. A statement of an attorney that he had authority to make assignments of judgment was the mere declaration of a conclusion from facts undisclosed to the court, and was incompetent.

**FRAUDULENT CONVEYANCES:** Creditors' Bills—Evidence of Intent of Debtor to Defraud. To grant the relief prayed for by a creditor's bill against a judgment debtor and his grantee, it must be shown by a preponderance of evidence that the debtor sold and conveyed the land with intent to defraud his creditors, and that the grantee took the conveyance with knowledge of such fraudulent intent, or to aid him therein.

**FRAUDULENT CONVEYANCES:** Creditors' Bills—Necessary Parties to Suit. In a creditor's suit to subject land conveyed by the judgment debtor, if the conveyance is to be set aside, and the land subjected to plaintiff's judgment, it must appear that all persons whom the record shows to have had any interest in the property at the commencement of the action that would be prejudicially affected, are made parties, and are brought into court, with proper notice.

**FRAUDULENT CONVEYANCES:** Creditors' Bills—Burden of Proof. In a creditor's suit to subject land conveyed by a judgment debtor, the burden is on the plaintiff to establish any fraud in the conveyance, and the other facts on which his prayer

for relief is based, including his allegation that the sale was for a grossly inadequate consideration.

**FRAUDULENT CONVEYANCES:**    Evidence—Close Relationship. The law will closely scrutinize transactions between close relatives, or members of the same family, where their effect is to prevent creditors from seizing a debtor's property, but such fact of relationship is not alone sufficient to sustain a charge of fraud, nor is the mere fact that the purchase or sale is to prevent the creditor of the seller from collecting his claim sufficient, of itself, to justify the court in setting the conveyance aside.

**FRAUDULENT CONVEYANCES:**    Buyer's Knowledge of Seller's Indebtedness.    A buyer's mere knowledge that his grantor is in debt is insufficient to charge him with notice of intended fraud upon the seller's creditors in the conveyance to him.

**FRAUDULENT CONVEYANCES:**    Creditors' Bills—Interested Party Must Be in Court.    A decree setting aside a conveyance as being fraudulent as to a judgment creditor cannot be sustained, where it is shown by his own evidence that the land in question has been sold to a purchaser, and has been paid for, either in full or in part, and that the said purchaser is not in court.

**EVIDENCE:**    Declarations—Subsequent Statements of Grantee. Statements of an alleged fraudulent grantee, made after he took his conveyance, do not bind his grantor, a judgment debtor, and would not bind the purchaser from him, if he were a party to a judgment creditor's bill to subject the land.

*Appeal from O'Brien District Court.*—WILLIAM HUTCHINSON, Judge.

OCTOBER 14, 1919.

ACTION in equity in the nature of a creditor's bill to subject certain real estate to the payment of judgments rendered against the defendant E. B. Stone. Decree for plaintiff, as prayed, and defendants appeal.—*Reversed.*

*O. H. Montzheimer,* for appellants.

*R. J. Locke* and *McCulla & McCulla,* for appellee.

WEAVER, J.—It appears that the defendant E. B. Stone had become indebted to a considerable number of persons. The claims against him were, for the most part, quite small, but, small as they were, they were too great for his ability to pay, and he had no visible assets subject to execution.

In September, 1916, his mother died, leaving him heir to an undivided fraction of a small tract of land, a state of affairs which naturally awoke the interest, if not the enthusiasm, of his creditors, and soon thereafter, the local constables were made busy serving original notices upon the unfortunately fortunate debtor. The claims were reduced to judgment in justice's court, and transcripts were in due course filed in the office of the clerk of the district court. Before this had been done, however, Stone had sold and conveyed his interest in the property to W. J. Kennedy, a brother-in-law; and before this action was begun, Kennedy had sold and, by written contract, had agreed to convey the same to one Oldhausen, who does not appear to have been made a defendant herein.

In November, 1917, this action was begun in the name of the Swanson Automobile Company, which appears to be the trade name under which one Solomon Swanson is doing business. The petition alleges, first, that plaintiff owns a judgment returned in his favor against Stone for $15 and costs. In other and separate paragraphs are described four other judgments, rendered in favor of persons other than plaintiff, but alleging, in each instance, that the same had been assigned to him by the judgment plaintiff, that all are unpaid, and that Stone is without property or assets which can be subjected to their payment.

Plaintiff further alleges that the conveyance by Stone was made to hinder, delay, and defraud his creditors; that such fraudulent purpose was well known to Kennedy, who made the purchase for a grossly inadequate consideration. It is, therefore, prayed· that the conveyance be set aside,

and the property subjected to the payment of said judg-ments.

The defendants deny the allegations of the petition, except the fact of the rendition of the judgments.

I.  It appears without dispute that the real or family name of the plaintiff is Solomon Swanson, and that he is doing business as "Swanson Automobile Company," the name in which this suit is brought.  Ap-pellant makes the point that the action, not being brought in the name of the real party in interest, should be dismissed.  The objection is not well taken.  Under the law of this state, a man may law-fully adopt any trade name in which to conduct his busi-ness, and, so long as it is not made a cover or means of fraud, he may sue or be sued by such designation.  *Enslow & Son v. Ennis,* 155 Iowa 266.

1. PARTIES: use of trade name.

II.  It is further objected that, in so far as plaintiff's claim is based upon the several judgments alleged to have been assigned to him, the evidence is insufficient to support a decree for the relief prayed.  This objec-tion appears to be well made; for, while it may be regarded as proved,—indeed, it is admitted,—that such judgments were duly entered against the defendant Stone, the record is without any competent evidence that plaintiff has any right, title, or interest therein, or authority from the judgment plaintiffs to sue for the relief demanded.  Lest question be made of the accuracy of this statement, we quote the evidence complete and verbatim as it appears in the abstracts, as follows:

2. EVIDENCE: best and sec-ondary: in-sufficient showing of due diligence.

"Solomon Swanson, called on behalf of the plaintiff and duly sworn, testified as follows: 'I am plaintiff in this action, doing business under the name of the Swanson Au-tomobile Company; reside at Cherokee, Iowa.  Q. Now, Mr. Swanson, did you ever have any agreement with the

attorneys for other creditors in this action about bringing the action in your name? (Defendants object as incompetent, immaterial, and irrelevant. Court: Ruling reserved. Defendants except.) A. Yes, sir. Q. What was that agreement? (Defendants make same objection, and for further reason that it's not shown the attorneys were authorized to make any agreement in regard to bringing the action. Court: Ruling reserved. Defendants except.) A. Well, I don't know as to the agreement, only that they wanted me to be defendant in the case. This debt to me was first contracted November 1st, 1915; I made attempts to collect it, and it is still unpaid. I have not any written assignments of these judgments, and did not have any written assignments of these judgments.' "

"W. P. McCulla, called on behalf of plaintiff, duly sworn, testified as follows: 'I am an attorney at Cherokee, Iowa; the judgments referred to in the petition, and marked Exhibits B, C, D, and E, were not assigned, to my knowledge, by the plaintiffs of those judgments to the plaintiff in this action. There were assignments in writing by someone representing them. Q. Who were those assignments made by? (Defendants object to all this testimony as not the best evidence, and as incompetent, immaterial, and irrelevant. Court: Ruling reserved,—proceed. Defendants except.) A. Molyneux & Maher for Mrs. Carrie Billings, and by myself as attorney for Metcalf & Cannon and for Sarah Pratt. These assignments were in my possession, and I don't know where they are now. I have made diligent search for them, but not as thoroughly as I would have done had I known what I know today. I looked in my files yesterday for them, and could not find them, and supposed they were here with Mr. Locke; and I find, on coming here, that they are not here; but they were not in my files where I had them. Q. State whether they were made before or after this action was begun.

(Defendants object as not the best evidence, incompetent, irrelevant, and immaterial, and it appearing that the assignments were made by the attorney, and it not being shown that the attorney had any authority to make the assignments. Court: Ruling reserved. Defendants except.) A. They were made before. Q. You knew that those —did you know as to whether the persons who executed the assignments—had those persons had authority so to do? (Defendants object as immaterial, leading, and suggestive. Court: Ruling reserved. Defendants except.) A. I know I had authority in the Metcalf & Cannon and Pratt judgment personally to execute the assignments, and Molyneux & Maher sent me the assignment later, saying that they would—(Defendants object as incompetent, immaterial, and irrelevant, and not the best evidence as to what Molyneux & Maher said. Court: Ruling reserved. Defendants except.) Q. Do you know who owns those judgments now? A. Yes. Q. Who is it? (Defendants object as incompetent, immaterial, and calling for a conclusion, and not best evidence. Court: Ruling reserved. Defendants except.) A. Solomon Swanson. Q. What relation is he to the plaintiff in this case? A. He is the same party who does business under the name of the Swanson Automobile Company. Q. Has he held those judgments since before this case begun? A. Yes, sir. (Defendants make same objection; ruling reserved by court.)' "

"Cross-examination. I had the assignments in my safe; thought I had sent them to Mr. Locke, when I didn't find them in the files yesterday. They may be in my safe. I don't think they are in my office, because I had them with my files. I have been away from home some time, returned Saturday night, and searched for the assignments yesterday for about ten minutes. We looked through the files in Mr. Locke's office, and could not find them. I could not go through all the files in my office in ten minutes,—not all

the files; they may be in my files yet—misplaced—it might be possible. Q. You say Solomon Swanson is the sole owner of the business conducted under the name of the Swanson Automobile Company? A. This is my understanding,—yes, sir. Q. And all of these judgments that are mentioned in this petition, except the one of the Swanson Automobile Company, you say have been assigned? A. Yes, sir. Q. By the attorneys for the plaintiffs in each case? A. Yes, sir. Q. To whom? A. Swanson Auto Company, for the purpose of this suit."

It would seem to need no argument or array of authorities to demonstrate the utter insufficiency of this showing. It may well be conceded that an assignment of these judgments to plaintiff, wholly without consideration, and for the mere purpose of having the suit prosecuted and collection of the judgments enforced in his name would not be any defense to such action; for, in such case, the judgment plaintiffs would doubtless be bound by the adjudication. But even if this be true, it is still the right of the defendants to insist that there be some competent showing that such assignments were made, or at least some evidence from which assignments may be inferred or presumed. Nothing of that kind is here shown. True, we have the testimony given by one of plaintiff's counsel, in which he says, "There were assignments in writing," not made by the judgment plaintiffs, but by their counsel. These writings were not produced in evidence. The witness says he does not know where they are. They were originally in his possession, but he now says that, after ten minutes' search through his safe and files, he fails to find them, but that they still may be in his files, misplaced. He seems to labor under a faint impression that he delivered them to his associate counsel, Mr. Locke, and says that, with Mr. Locke, he also made a search of the office of the latter, without avail; but Mr. Locke himself is not offered as a witness.

Stated in substance, the witness thinks the papers are lost but is not prepared to say that a thorough search of his office may not result in their discovery. That this is an insufficient foundation for the introduction of parol proof of the contents of the writings is certain. *Hawkins v. Rice,* 40 Iowa 435; *Howe M. Co. v. Stiles,* 53 Iowa 424; *Hansen v. American Ins. Co.,* 57 Iowa 741, 742. The rule, as frequently stated, is, in substance, that, while it is not necessary to prove the loss of the instrument beyond possibility of mistake, the party proposing to give parol proof of its contents "must show that he has in good faith exhausted, in a reasonable degree, the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him." 10 R. C. L. 917, 918. The testimony of the person who is last shown to have been in possession of the paper that he doesn't know where it is, that he has spent ten minutes in a partial search of his office and files, without success, and his admission that a complete examination of his files cannot be made in that time, and that it is possible that the instrument is still there, fall far short of the standard fixed by said rule.

But what is still more to the point, if we were to say that a case was made for the admission of parol evidence of the contents of the alleged written assignments, no evidence of that nature was produced, or even offered. The argument for appellee seems to proceed on the assumption that the witness's statement that the missing papers were assignments of the several judgments in question is all that is necessary, to show the court the nature and legal effect of the writings. But surely this is not correct. Credit may be given the witness for perfect good faith in speaking of the papers as "assignments of the judgments," but that is, at best and at most, a mere expression of his legal opinion, based upon his reading or

3. EVIDENCE: opinion evidence: conclusions: contents of lost papers.

knowledge of the language of the instruments. What the law requires, and what the defendants have a right to demand, is that the witness shall, if he can, state the language of the writings, in terms or in substance, and leave to the court the determination of whether they are "assignments of the judgments." This is all the more important in a case like the one before us, where the plaintiff himself confesses that he never had or received the alleged assignments, and apparently never knew or heard of their existence until the case was in trial, and his lucid explanation of the presence of these claims in his petition is only that "they" wanted him "to be defendant in the case." We are, therefore, wholly without competent proof that the judgments were ever assigned to the plaintiff.

III. There is still another difficult angle in the plaintiff's case upon these "assigned" judgments. It is conceded that the so-called assignments were not made by the judgment plaintiffs, but by attorneys who 4. ATTORNEY AND CLIENT: authority: assignment of judgment. had represented such plaintiffs in obtaining the judgments. At least, such is our interpretation of the record.

Nothing is better established in the law of attorney and client than that, in the absence of special authority from the client, the attorney cannot validly assign a judgment. *Ritz v. Rea,* 155 Iowa 189. There is a general statement in the testimony of the 5. EVIDENCE: opinion evidence: conclusion: authority of attorney to assign judgment. attorney that he "had authority" to make assignment of two certain judgments, but here again is the mere declaration of a conclusion from facts which are undisclosed to the court.

IV. The foregoing consideration makes it very clear that the trial court was without evidence sufficient to sustain a decree subjecting the land in question to the payment of the four judgments alleged to have been assigned to the

plaintiff. We now turn to other features of the case which have a proper bearing upon the plaintiff's right to any relief upon any of the judgments, including the one rendered in his favor.

To grant the relief prayed for as to any part of the plaintiff's claims, it must be shown by a preponderance of evidence that Stone sold and conveyed the land with intent to defraud his creditors, and that Kennedy took the conveyance with knowledge of such fraudulent intent, or to aid him therein; and, if the conveyance is to be set aside, and the land subjected to such judgments, it must further appear that all persons whom the record shows to have had any interest in the property at the commencement of this action whose interests would be prejudicially affected by the granting of the relief prayed, have been made parties, and brought into court by proper notice.

6. FRAUDULENT CONVEYANCES: creditors' bills: evidence of intent of debtor to defraud.

7. FRAUDULENT CONVEYANCES: creditors' bills: necessary parties to suit.

The petition contains sufficient allegations to entitle plaintiff to some degree of relief, if they are found to be supported by the evidence. In this, however, there appears to be a manifest lack. It is shown that Stone had been an insolvent, when he came by inheritance into the ownership of certain real estate, and that, very shortly after acquiring the property, and before any of these judgments were rendered, he conveyed it to Kennedy; also that, before this suit was begun, Kennedy made an apparently valid contract to sell the land to one Oldhausen, who paid at least a part of the purchase price.

Aside from the fact that, before acquiring said interest in the land, Stone was an insolvent, that he conveyed the property to a buyer who was a family relative, and has since apparently relapsed into insolvency, there is little, if anything, tending to show that the transaction was tainted

with fraud. True, the court finds in its decree that the consideration paid by Kennedy was grossly inadequate, and much less than the real value of the property; but a careful search of the record discloses no evidence what-ever as to the character or amount of the consideration paid. It is stipulated that Kennedy, when taking the con-veyance, did pay off judgment claims against Stone to the amount of $273. It may be assumed, we think, that there were judgments which stood as liens upon the land and were then paid, in order to clear the title from such in-cumbrance; but there is nothing whatever to indicate that this constituted the entire consideration for the convey-ance. It is the plaintiff who charges fraud, and one of his principal allegations of fact constituting

**8. FRAUDULENT CONVEYANCES: creditors' bills: burden of proof.** the alleged fraud is his assertion that the sale and conveyance to Kennedy were for a grossly inadequate consideration, and we think it clear that the burden was upon plaintiff to establish this and other facts on which his prayer for relief is based.

It is, of course, true that the law will closely scrutinize transactions between close relatives, or members of the same family, where the effect of such dealings is to prevent cred-itors from reaching a debtor's property.

**9. FRAUDULENT CONVEYANCES: evidence: close relationship.** But the fact of relationship between buyer and seller is not alone sufficient to sustain a charge of fraud, nor is the mere fact that the effect of the purchase and sale is to prevent a creditor of the seller from collecting his claim of itself sufficient to justify the court in setting it aside. *State Bank v. Schutt,* 174 Iowa 583, 587; *Mahaska County v. Whitsil,* 133 Iowa 335; *Levitt v. Brendel,* 163 Iowa 67.

It may, perhaps, be inferred from the relationship of the parties that Kennedy knew Stone's financial condition, but he also knew that, though carrying a burden of debt,

Stone had the right to sell and convey his

10. FRAUDULENT
    CONVEYANCES:
    buyer's knowl-
    edge of sell-
    er's indebted-
    ness.

property in good faith. He was under no obligation, in law or equity, to refrain from exercising all the ordinary acts of ownership over his own property, and was not bound to hold it in kind for the benefit of creditors who might thereafter sue him. The extent of his obligation, as a matter of law or good morals, was to keep himself guiltless of any disposition of the property with intent to cheat, hinder, delay, or defraud his creditors, and the extent of Kennedy's duty was not to make the purchase if he knew or, as a reasonable person, ought to know that the sale to him was being made to promote or effect a fraud upon Stone's creditors. His mere knowledge that Stone was in debt would not, as we have said, be enough to charge him with notice of an intended fraud; for it is obvious that, if acting honestly, Stone could better discharge his creditor's claims by converting his property into money than by leaving them for collection to be made by suit, judgment, and forced sale.

If, however, Stone was selling or offering to sell at a price greatly less than the value of the property, ordinary prudence would doubtless have led Kennedy to beware, and to suspect Stone of preparing to defraud his creditors; and if this were shown, neither Stone nor Kennedy could rightly complain of the decree against them. But, as we have pointed out, there is no evidence whatever of the real consideration paid, and we cannot presume the existence of a badge of fraud not proven.

Finally, if the plaintiff could be said to have otherwise made a case, so far as the judgment in his own behalf is concerned, we cannot see how a decree of this kind can be

sustained, when it is shown by plaintiff's

**11. FRAUDULENT CONVEYANCES: creditors' bills: interested party must be in court.**  own evidence that the land in question has been sold to Oldhausen, by whom the purchase price has been paid, or paid in a large part, and that said purchaser is not in court. Oldhausen bought the land some eight or nine months before this suit was begun; there is no charge of fraud against him; and if there were any such charge, it could not be adjudicated in an action to which he is not a party.

The evidence produced by plaintiff tending to show statements by Kennedy said to have been made since he took the conveyance from Stone do not bind Stone, nor

**12. EVIDENCE: declarations: subsequent statements of grantee.**  would they bind Oldhausen, if he were a party to this proceeding, and we do not consider them.

Taking the record as an entirety, we hold that the decree setting aside the conveyance to Kennedy cannot be sustained, and the same is ordered reversed, and plaintiff's petition dismissed at plaintiff's costs.—*Reversed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.