**Debrah PICKERING and Wesley Stevens, Attorneys–in–Fact for Paulyne Stevens, Plaintiffs,**

v.

**URBANTUS, LLC d/b/a Emeritus at Urbandale; and Emeritus Corporation d/b/a Emeritus at Urbandale, Defendants.**

No. 4:11–cv–00411–JEG–RAW.

United States District Court,
S.D. Iowa,
Central Division.

Nov. 23, 2011.

Steven P. DeVolder, DeVolder Law Firm, Norwalk, IA, Mark S. Pennington, Kutmus, Pennington & Hook, West Des Moines, IA, for Wesley Stevens, Debrah Pickering.

Christopher P. Jannes, Kendall R. Watkins, Davis Brown Koehn Shors & Roberts PC, Des Moines, IA, for Urbantus LLC, Emeritus Corporation.

## ORDER

JAMES E. GRITZNER, Chief Judge.

Now before the Court is a Combined Motion to Dismiss or Stay the Proceedings and to Compel Arbitration brought by Defendants Urbantus, LLC (Urbantus), and Emeritus Corporation (Emeritus) (collectively, Defendants).[1] Plaintiffs Debrah

---

1. At the time the present motion was filed, the only named defendant was Urbantus, LLC. On September 26, 2011, Plaintiffs requested by motion the joinder of Emeritus Corporation which the Court granted on October 18, 2011. Concurrently, Plaintiffs filed an amended complaint naming Emeritus Corporation as a defendant. In their reply brief,

Pickering (Pickering) and Wesley Stevens (collectively, Plaintiffs), as Attorneys–in–Fact for Paulyne "Polly" Stevens (Ms. Stevens), resist. Neither party has requested a hearing and the Court finds that none is needed; therefore, the matter is fully submitted and ready for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 2009, Pickering entered into a Memory Care Occupancy Agreement (Occupancy Agreement) with Emeritus on behalf of Ms. Stevens, effective July 18, 2009. The Occupancy Agreement, which makes no mention of Urbantus, states that it is made "between Emeritus Corporation, a Washington corporation ('we,' 'us' or 'our') and Polly Stevens ('You' or 'Resident')." Occupancy Agreement, Defs.' Ex. B 3, ECF No. 2–3. Pickering, acting in her shared capacity as Attorney–in–Fact for Ms. Stevens, also signed an Agreement to Resolve Disputes by Binding Arbitration (Arbitration Agreement). Per its terms, the Arbitration Agreement was entered into by "Emeritus at Urbandale (the 'Community') and Polly Stevens." Arbitration Agreement, Defs.' Ex. C 1, ECF No. 2–4. This Arbitration Agreement, which is not attached to nor incorporated by the Occupancy Agreement, provides:

> any action, dispute, claim or controversy of any kind, whether in contract or in tort, statutory or common law, personal injury, property damage, legal or equitable or otherwise, arising out of the provision of assisted living services, healthcare services, or any other goods or services provided under the terms of any agreement between the Parties, including disputes involving the scope of this Arbitration Agreement, or any other dispute involving acts or omissions

that cause damage or injury to either Party, except for matters involving eviction, **shall be resolved exclusively by binding arbitration** and not by lawsuit or resort to the judicial process, except to the extent that applicable law provides for judicial review of arbitration proceedings. To the fullest extent permitted by law, this Arbitration Agreement shall apply to third parties not signatories to this Agreement, including any spouse, heirs, or persons claiming through the Resident. Any claims or grievances against the Community's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Agreement. *Id.* The Arbitration Agreement, which took effect July 16, 2009, has a governing law provision which specifies that it "shall be governed by and interpreted under the Federal Arbitration Act." *Id.* at 2. Pursuant to the above agreements, Ms. Stevens became a tenant at Emeritus at Urbandale in Polk County, Iowa.

Emeritus at Urbandale, though not itself a legal entity, is owned and operated by Emeritus, a Washington corporation with its principal place of business in Seattle. Emeritus is also the sole member of Urbantus, a Washington limited liability company with its principal place of business in Seattle Washington. Urbantus owns the real estate upon which Emeritus at Urbandale is operated. Emeritus at Urbandale is a nursing home facility which is certified to provide dementia-specific assisted living programs to residents. In operating its programs, Emeritus at Urbandale orders a variety of medical equipment and supplies from a number of vendors and suppliers through national vendor contracts. Many

---

Defendants addressed this circumstance, and, in the interest of expediency, filed said reply on behalf of both Urbantus and Emeritus.

Plaintiffs have not objected. Accordingly, the Court will consider the motion as brought on behalf of both named Defendants.

of these third parties maintain their principal offices in states other than Iowa, including Florida, Minnesota, Michigan, and Kentucky.

On March 1, 2011, Ms. Stevens, while a resident of Emeritus at Urbandale in the dementia-specific assisted living program, was found on the floor of her room at approximately 1:50 a.m. She was discovered by an Emeritus at Urbandale employee who placed Ms. Stevens back into her bed. That afternoon, family members of Ms. Stevens requested that an ambulance be called, and Ms. Stevens was subsequently taken to Iowa Methodist Medical Center West and admitted into the intensive care unit. Following an examination, Ms. Stevens was diagnosed with six broken ribs and a partially collapsed lung.

Plaintiffs filed their petition in the Iowa District Court for Polk County on August 17, 2011, alleging that Defendants' employees and agents were negligent in failing to document Ms. Stevens' fall, in failing to follow protocol following the fall, in moving Ms. Stevens prior to an appropriate medical assessment, in failing to notify the appropriate health personnel or call 911, and in failing to notify family members. Plaintiffs allege further negligence in the training of Defendants' employees, in the failure to document their requisite training, and in the insufficient staffing of Emeritus at Urbandale. Plaintiffs seek compensatory and punitive damages. Urbantus timely removed the action to this Court based upon diversity jurisdiction. Following removal, Urbantus filed the present motion pursuant to 9 U.S.C. §§ 3–4, which Plaintiffs responded to concurrent with the filing of their motion to remand, amended complaint, and motion to join Emeritus as a defendant. Based upon subsequent filings by the parties, and the approval of the requested joinder, the Court denied Plaintiffs' motion to remand as moot, leaving only Defendants' motion for consideration.

## II. DISCUSSION

 The Federal Arbitration Act (FAA) was passed "to overcome courts' refusals to enforce agreements to arbitrate" by "plac[ing] such agreements upon the same footing as other contracts." *Allied–Bruce Terminix Cos., Inc., v. Dobson,* 513 U.S. 265, 270–71, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (internal quotation marks and citations omitted). Arbitration agreements that fall under the FAA are considered "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements. . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In accordance with the intent of Congress, the FAA's provisions, though substantive in nature, are applied in diversity cases. *Allied–Bruce Terminix Cos., Inc.,* 513 U.S. at 271, 115 S.Ct. 834. Furthermore, when in conflict with state law, the FAA preempts state statutes. *Id.; see also Faber v. Menard, Inc.,* 367 F.3d 1048, 1052 (8th Cir.2004) (explaining that the FAA "preempts all state laws that reflect a policy disfavoring arbitration and which are designed specifically to limit arbitration").

The FAA governs written maritime transactions and contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has interpreted "involving commerce" broadly to constitute "the functional equivalent of 'affecting [commerce].'" *Allied–Bruce Terminix Cos., Inc.,* 513 U.S. at 274, 115 S.Ct. 834. The phrase "evidencing a transaction" was interpreted to mean that the transaction must, "*in fact,* [ ] have involved interstate commerce." *Id.* at 277, 115 S.Ct. 834.

■ As a preliminary matter, the Court must determine whether the Arbitration Agreement falls under the purview of the FAA. That the agreement is in written form is not at issue here; therefore, the Court need only consider if the contract involves commerce. The arbitration clause provides that it "shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1–16." Arbitration Agreement, Defs.' Ex. C 2, ECF No. 2–4. While Defendants provide extensive argument in their briefing to establish that Emeritus at Urbandale's conduct qualifies as interstate commerce, Plaintiffs do not contest this general statement of the law nor the applicability of the FAA when nursing facilities are operated by entities from other states.[2] Plaintiffs rather challenge the sufficiency of the record to demonstrate a commerce nexus as to Urbantus.

While the relationship of the parties is further discussed below, viewed in either context the record reflects that the Arbitration Agreement involves interstate commerce. As mentioned above, Congress clearly intended to invoke through the FAA the "broadest permissible exercise of [its] Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). As raised by Defendants, the affect on interstate commerce can be viewed in the aggregate. *Id.* Through the course of complying with the Occupancy Agreement, which stipulates the care to which Ms. Stevens is entitled, Emeritus at Urbandale continually acted, in fact, in interstate commerce. Defendants provided an affidavit from Lisa Eastman, the Administrator of Emeritus at Urbandale attesting to the variety of medical equipment and other supplies that Emeritus at Urbandale purchases through a number of out-of-state vendors and suppliers. The products purchased, shipped from at least four alternate states, range from laundry supplies, to food and culinary products, to pharmaceutical and medical goods. Interstate transactions such as these certainly fall within the broad scope Congress crafted under the FAA. *See THI of S.C. at Columbia, LLC v. Wiggins*, C/A No. 3:11–888–CMC, 2011 WL 4089435, at *1 n. 3 (D.S.C. Sept. 13, 2011) (enforcing, under the FAA, an arbitration clause against a surviving family member who had sued the retirement home where her father had resided, holding that "[t]he FAA has an expansive reach, similar to the Commerce Clause, such that an arbitration clause merely 'affecting' interstate commerce would be covered by the statute" (quoting *Allied–Bruce Terminix Cos., Inc.*, 513 U.S. at 273–74, 115 S.Ct. 834)).

The parties involved in executing the Occupancy Agreement are located in separate states, as Emeritus at Urbandale and Ms. Stevens are located in Iowa, the nursing facility's owner, Emeritus, is located in Washington, and the owner of the real estate upon which the nursing facility is built is located in Washington, necessitating the involvement of interstate commerce. *See Hodge v. Top Rock Holdings, Inc.*, No. 4:10CV1432 FRB, 2011 WL 1527010, at *3 (E.D.Mo. Apr. 20, 2011) ("[T]he [c]ourt has little trouble concluding that the interstate investment in property located in Missouri, owned by persons in

---

**2.** Other courts within the Eighth Circuit have applied the FAA to arbitration agreements between nursing homes and residents when neither party disputed its application and the agreement specified its governance. *See Jones v. GGNSC Pierre LLC*, 684 F.Supp.2d 1161, 1164 (D.S.D.2010); *see also Northport Health Servs. of Ark., LLC v. Robinson*, Civil No. 08–5223, 2009 WL 140983, at *2 (W.D.Ark. Jan. 12, 2009) (noting that the arbitration agreement stipulated the parties' acknowledgment that the facility regularly engaged in transactions involving interstate commerce).

Missouri and Colorado, managed by an entity in Colorado, leased to an entity headquartered in Illinois, and from which proceeds and profits are distributed to persons in Colorado and Missouri, involves interstate commerce.").

■ Under the FAA, the Court's initial role is to determine "1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute *falls within the scope* of the arbitration agreement." *Indus. Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F.3d 516, 520 (8th Cir.2009) (internal quotation marks and citation omitted); *see also Int'l Ass'n of Bridge, Structural, Ornamental and Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. and Constr. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir.2004) ("[W]hether the parties have a valid arbitration agreement that binds them is a question for judicial determination. Likewise, any question as to whether a valid arbitration agreement applies to the subject matter at hand is a question for a court to answer." (internal citations omitted)). "[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The validity of an arbitration agreement is governed by state law. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir.2001).

■ Plaintiffs argue that the forum selection clause cannot be validly enforced because neither Urbantus nor Emeritus is a party to the Arbitration Agreement. Since neither of the parties is named in the Arbitration Agreement, nor are they listed therein as parents or subsidiaries, Plaintiffs contend Defendants cannot compel them to submit to arbitration. Plaintiffs allege that since Emeritus at Urbandale is not a legal entity, it cannot have parents or subsidiaries. Finally, Plaintiffs note that the Arbitration Agreement is not incorporated by reference into the Occupancy Agreement; therefore, they argue that the Occupancy Agreement cannot be used to bootstrap Defendants back into the Arbitration Agreement. Defendants counter that the Occupancy Agreement clearly establishes that Emeritus operates Emeritus at Urbandale. Since Emeritus is the sole owner of Urbantus, Defendants contend that Urbantus qualifies as a subsidiary under the Arbitration Agreement.

■ Under Iowa law, it is clearly established that a party may be sued under its own name or the name it chooses to use in transactions, and the use of such a name does not invalidate a contract. *See Thune v. Hokah Cheese Co.*, 260 Iowa 347, 149 N.W.2d 176, 178 (1967) ("Iowa has long recognized that a person may sue or be sued under a trade name."); *see Keeling v. Priebe*, 219 Iowa 155, 257 N.W. 199, 200 (1934) ("It is the settled rule of law in this state that an action may be prosecuted or defended in a trade-name."); *see Ambro Adver. Agency v. Speed–Way Mfg. Co.*, 211 Iowa 276, 233 N.W. 499, 500 (1930) (holding that a contract was not voided simply because a party entered into the agreement under a fictitious name); *see Swanson Auto. Co. v. Stone*, 187 Iowa 309, 174 N.W. 247, 248 (1919) ("Under the law of this state, a man may lawfully adopt any trade-name in which to conduct his business, and, so long as it is not made a cover or means of fraud, he may sue or be sued by such designation."); *see D.A. Enslow & Son v. Ennis*, 155 Iowa 266, 135 N.W. 1105, 1106 (1912) ("Therefore we have a case wherein it appears that an individual, contracting in his own right, has used a trade name. He might sue, therefore, either in his own name or in the name used

in the transaction, and the record shows that in letters written both by and to the plaintiff such trade-name was employed, and the rendering of judgment in favor of the real party in interest could not be prejudicial to the defendant.").[3]

■ In the present case, the Occupancy Agreement clearly identified that Ms. Stevens was entering into an agreement with Emeritus, the operator of Emeritus at Urbandale. Defs.' Ex. B, ECF No. 2–3. "A corporation, like an individual, may do business and contract in a name other than its legal name." *Butler Mfg. Co. v. Elliott & Cox*, 211 Iowa 1068, 233 N.W. 669, 670 (1930); *see also Pro Edge, L.P. v. Gue*, 374 F.Supp.2d 711, 744 (N.D.Iowa 2005) (same). Emeritus at Urbandale is not a separate legal entity, but rather, a trade name used by Emeritus in its operation of its residential facility. *See Gen. Ins. Co. of Am. v. Clark Mall, Corp.*, 631 F.Supp.2d 968, 973 (N.D.Ill.2009) ("Generally, the designation 'd/b/a' or 'doing business as' is merely descriptive of the person or corporation doing business under some other name and does not create a distinct entity."). Therefore, while the Arbitration Agreement was entered into under the name Emeritus at Urbandale, it is binding on Emeritus. *See Pro Edge*, 374 F.Supp.2d at 746 ("[T]he practical effect of the use of the fictitious name is merely that the [ ] Agreement was in actuality held by [the corporation], not its fictitious counterpart-it has no effect on the enforceability of the [ ] Agreement *by [the Corporation]*.").

The Arbitration Agreement provides that "[a]ny claims or grievances against the Community's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Agreement." Arbitration, Agreement, Defs.' Ex. C 1, ECF No. 2–4. In an apparently difficult search for persuasive authority, Plaintiffs interpret *Byrd v. Simmons*, 5 So.3d 384 (Miss.2009) to stand for the proposition that an arbitration agreement not executed in the name of the corporate entity of the nursing home is invalid and cannot be enforced against the resident. However, even assuming useful application of Mississippi precedent, the court in *Byrd* refrained from enforcing an arbitration agreement, not because of the improper naming of a party, but because the corporate nursing home had not signed the arbitration agreement, therefore no enforceable contract existed. *Id.* at 390. Similarly, the court found that since the arbitration agreement was a separate agreement, the resident's signing of the admission agreement (comparable to the Occupancy Agreement) did not constitute mutual assent to the arbitration agreement. *Id.* None of the court's analysis in *Byrd* stands for the proposition that Plaintiffs request—that Defendants are not a party to the Arbitration Agreement, and it has no persuasive value herein. In the present case, Ms. Stevens, through Pickering, signed the Arbitration Agreement with Emeritus, who was doing business as Emeritus at Urbandale. This Agreement subjects Ms. Stevens' disputes with Emeritus and its affiliates and subsidiaries to binding arbitration.

■ As a second concern under the FAA, the Court must consider if the claims raised by Plaintiffs fall under the Arbitration Agreement. "A motion to compel arbitration should not be denied unless it

---

**3.** *See also Klouda v. Brune*, No. LACV 040596, 2002 WL 32832034, at *2 (Iowa Dist.Ct. July 10, 2002) ("Midwest Auction Service is an assumed name or trade name and is nothing more than [defendant] individually using the name 'Midwest Auction Service' to conduct business as a sole proprietorship. It is not a corporation, any type of partnership or other legal entity."), reflecting a more recent application of the principle.

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Indus. Wire Prods.*, 576 F.3d at 520 (internal quotation marks and citation omitted). Here, the causes of action are tort claims, arising from acts and omissions that took place at Emeritus at Urbandale regarding the care of Ms. Stevens and the operation of the residential facility. The Arbitration Agreement explicitly covers any claim "whether in contract or in tort ... arising out of the provision of assisted living services, healthcare services, or any other good or services provided under the terms of any agreement between the Parties, including ... any other dispute involving acts or omissions that cause damage or injury to either Party." Arbitration Agreement, Defs.' Ex. C 1, ECF No. 2–4. As the Arbitration Agreement is valid, and there is no argument the claims brought by Plaintiffs are outside its scope, the Court is compelled on this record and under the FAA to enforce its terms.

 Defendants have petitioned the Court to dismiss this action and compel arbitration. However, the FAA provides that a court, having held that the cause of action is subject to arbitration, shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As this Court addressed in *West Liberty Foods, L.L.C. v. Moroni Feed Co.*, 753 F.Supp.2d 881, 889–90 (S.D.Iowa 2010), the Eighth Circuit Court of Appeals has yet to weigh in on the circuit split regarding whether dismissal of an action is permitted under the FAA.[4] In accordance with this Court's

precedent, and the general acceptance in this circuit that only a stay is authorized, the Court will refrain from dismissing the case but will grant a stay pending arbitration.

## III. CONCLUSION

Based on the foregoing, Defendants' Combined Motion to Dismiss or Stay the Proceedings and to Compel Arbitration [ECF No. 2] must be **granted in part and denied in part.** Insofar as the Defendants have moved to dismiss the case, their motion is **denied.** Defendants' request to stay the proceedings and compel arbitration is **granted.** Upon completion of the arbitration proceedings, the parties shall promptly advise this Court if further proceedings are necessary herein or if the matter can then be dismissed.

**IT IS SO ORDERED.**

---

4. The Court of Appeals nearly confronted the issue in reversing an order of dismissal and remanding for a stay pending arbitration in *Green v. SuperShuttle Int'l., Inc.*, 653 F.3d 766 (8th Cir.2011), but left open the question of whether a district court would have discretion

under different circumstances to dismiss, over a concurrence arguing there is no discretion to dismiss. *Id.* at 769–71.

