SOPHRONIA GRANT, Appellant, v. LIZZIE CHERRY et al., Appellees.

**FRAUDULENT CONVEYANCES:** Right of Creditor—Nonparticipa-
1  tion in Fraud. A creditor may be diligent in securing a convey-
ance in payment of his claim, so long as he acts solely for that pur-
pose, and not for the purpose of aiding the debtor in any fraudulent
scheme.

**ESTOPPEL:** Withholding Deed From Record—Nonreliance. A grantee
2  is not estopped from insisting on the validity of his conveyance .be-
cause he withheld it from record, when the party insisting on the
estoppel did not in any manner change his position by reason of
such withholding.

Headnote 1.   27 C. J. pp. 629, 630, 631, 835.   Headnote 2.   21 C. J. p.
1174.

*Appeal from Linn District Court.*—F. L. ANDERSON, Judge.

JANUARY 13, 1925.

ACTION by a judgment creditor to set aside a conveyance of
land on the ground that it was without consideration and in
fraud of creditors. By petition of intervention, the grantee in
the deed asked that her title be quieted as against the judgment
and an execution sale thereunder. From a decree for the de-
fendants and intervener, the plaintiff appeals.—*Affirmed.*

*George C. Claassen,* for appellant.

*Olive Johnson* and *Tobin, Tobin & Tobin,* for appellees.

VERMILION, J.—The appellee Lizzie Cherry conveyed the
land in controversy to her sister and codefendant Ella Cherry
by warranty deed, for an expressed consideration of ''one dollar
and other valuable consideration.'' The grantee
expressly ''assumed mortgages'' as a part of the
consideration. There was, at the time, a mort-
gage for $800 on the land. At the time the deed
was executed, there were pending three suits by the appellant,

1. FRAUDULENT
CONVEYANCES:
right of credi-
tor: nonpartici-
pation in fraud.

two of which were against Effie and Addie Cherry, sisters of the
appellees, for rent, and the other against the appellee Lizzie
Cherry for slander. Some two years after the execution of the
deed, but before it was filed for record, all of these actions were
compromised and settled by a judgment in one of the actions for
rent in favor of the plaintiff therein, the appellant here, for $300
against Effie and Addie Cherry and the appellee Lizzie Cherry,
who is designated therein as an intervener. Execution issued on
the judgment was levied on the land in question, and it was sold
as the property of the appellee Lizzie Cherry.

The petition attacked the deed on the ground that it was
without consideration, and in fraud of creditors of Lizzie Cherry,
and was fraudulently withheld from record until after appellant,
in reliance on the ownership of the land by Lizzie Cherry, as
disclosed by the record, obtained her judgment, whereby, it was
alleged, the appellee Ella Cherry was estopped to claim title
as against the sale under appellant's judgment. The answer, in
addition to a general denial, alleged that the deed was executed
and delivered upon a good and sufficient consideration. The
appellee Ella Cherry, by a petition of intervention, asked that
the sheriff be made a party, and enjoined from executing or de-
livering a sheriff's deed for the land, and that her title be
quieted.

Appellees and their sisters are by no means unknown or
obscure. As the Cherry Sisters, they achieved fame of a sort
upon the vaudeville stage, in years gone by. It appears from
the evidence that Lizzie, Effie, and Addie were the principal
performers, while Ella generally remained at home, and devoted
herself to the running of a small farm and the writing of
sketches for her sisters' public performances. There was a more
or less definite understanding between them that they should
share equally in the profits arising from their efforts. The evi-
dence shows that, at about the time of the execution of the deed,
Effie and Addie had contributed something from their earnings
to Ella, but Lizzie had not; and that the profits from Ella's farm-
ing operations had only sufficed to about take care of the taxes.
Ella and Lizzie testified that it was agreed between them that
the latter owed the former $500 as her part of the profits from
their entertainments, $200 for Ella's labor on the farm in taking

care of Lizzie's live stock, and $100 for money borrowed at various times. Lizzie owned the land in question, 20 acres, and it was agreed that she should convey it to Ella in settlement of this indebtedness, aggregating $800, and that Ella should assume a mortgage of $800 on the land. While their testimony is somewhat lacking in details and definiteness, particularly as to dates, it fairly tends to establish that such an indebtedness in fact existed, and that such an agreement was made and carried out by the execution and delivery of the deed. They are corroborated to some extent by the other two sisters. The arrangement was made at the instance of Ella, who was insisting on the payment of the money she claimed was due her, and was willing to take the land. Their testimony was not directly contradicted. Appellant relies entirely upon certain circumstances and contradictions in the testimony, as tending to show the falsity of the claim of appellees. Lizzie paid the taxes on the land until about 1921. She testified that she paid the taxes for 1917 because the property was taxed to her, and the conveyance was made in the fall of 1917; and they both say that, after that year, she paid them for Ella, at her request and with her money. After the execution of the deed, Lizzie procured an extension of the mortgage on the land, and signed an agreement extending its maturity. She and Ella both testified that this was done at the latter's request. We think there is nothing in these circumstances, as explained by appellees, necessarily contradictory of their claim that Ella took the land in good faith, in settlement of her demands against Lizzie, and certainly nothing sufficient to overcome their direct and uncontradicted testimony to that effect. There is some claim that Ella had used the land before the execution of the deed. This she denied; but, in any event, if such were the case, it would do no more than tend to show that Ella was indebted to Lizzie for the value of such use, and affect the amount of the latter's indebtedness. The land adjoins 20 acres owned by Ella, upon which she lived, and where, as we understand, she maintained the home to which her sisters returned from their professional tours. The land in question was unimproved, and largely covered with timber. It is undisputed that, after the execution of the deed, her possession was exclusive.

In order to set aside a conveyance on the ground that it

is fraudulent as against creditors, it must be shown that it was made by the grantor with intent to hinder and delay creditors. But a creditor, acting in good faith, may take security from his debtor or secure payment of his debt, although he knows that there are other creditors whose claims will thereby be defeated. And even knowledge on his part that the debtor is actuated by a fraudulent purpose is not sufficient to avoid the conveyance to him, if he acted in good faith and for the purpose of securing payment of his debt, and not for the purpose of aiding the fraud. *Rosenheim v. Flanders,* 114 Iowa 291; *Stienfort v. Langhout,* 170 Iowa 422; *Ford v. Ott,* 182 Iowa 671; *Halloran v. Halloran,* 195 Iowa 484. The insolvency of the grantor does not alone render his conveyance fraudulent. *Pieter v. Bales,* 126 Iowa 170; *Dickinson v. Davis,* 171 Iowa 29; *Keosauqua State Bank v. Hartman,* 184 Iowa 961.

It is shown that Lizzie Cherry has no property, and is insolvent. It does not appear, however, that, at the time the conveyance was made, she owed any other debts, or that other claims were being made against her than appellant's action for damages for slander. The conveyance was made nearly a year after that suit was commenced, and two years before the appellant's judgment was obtained. The conveyance was made at the instance of the grantee, who was insisting on the payment of her share of the profits from the entertainments of her sisters. If it should be conceded that Lizzie entertained a fraudulent intent to defeat any judgment that appellant might obtain in her action for slander, we think the evidence fairly establishes her indebtedness to Ella, and that there is no evidence from which it could be found that the latter participated in such fraudulent intent, or did more than secure payment of a bona-fide indebtedness to her. The value of the land is not shown. She satisfied her claim for $800, and assumed a mortgage on the land for a like amount. The evidence does not establish that the conveyance was fraudulent or without consideration.

As to the claim of estoppel, arising from the fact that the deed was not recorded until after the judgment was rendered, it is plain that appellant did not extend credit to Lizzie on the

2. ESTOPPEL: withholding deed from record: nonreliance. strength of her apparent ownership of the land. The deed was not withheld from record by any agreement or understanding with the grantor. At most, appellant merely took a judgment for $300 in settlement of an unliquidated demand for $2,000. A judgment, no matter how obtained or for what amount, would not, in the absence of fraud, have taken precedence over the unrecorded deed. *Foster v. Hobson*, 131 Iowa 58; *Moorman v. Gibbs*, 75 Iowa 537; *First Nat. Bank v. Hayzlett*, 40 Iowa 659. This, appellant was bound to know. A judgment for the full amount of her claim would have been equally uncollectible. She was not prejudiced by the failure to record the deed; she lost nothing thereby.

The decree below was right, and is—*Affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.