GEORGE W. HARRIS, Trustee, Appellee, v. ANNA CARLSON et al., Appellants.

**FRAUDULENT CONVEYANCES:** Husband and Wife—Knowledge of Fraud. Principle reaffirmed that a wife may validly take a conveyance from her husband for the sole purpose of securing payment of her claim, even though she knows of the fraudulent purpose of her husband.

**FRAUDULENT CONVEYANCES:** Husband and Wife—When Wife Not Creditor. A wife does not, *against her husband's creditors*, become the creditor of her husband by turning over to him her money for indiscriminate use in the family, and without any agreement for or expectation of repayment.

**HOMESTEAD:** Acts Constituting—Nonoccupancy. The naked act of a husband and wife in moving certain of their belongings to a farm and leaving them there, does not constitute the farm the homestead of the husband and wife.

**PLEADING:** Issues, Proof, and Variance—Failure of Proof. Evidence of the rental value of lands in a certain neighborhood is no evidence of the rental value of other lands in the same neighborhood, when such other lands are not shown to be similar to the land

as to which there is evidence; and a judgment based thereon is improper.

Headnote 1:  27 C. J. pp. 630, 631, 632.  Headnote 2:   27 C. J. p. 563.  Headnote 3:  29 C. J. p. 806.  Headnote 4:  23 C. J. p. 57 (Anno.)

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON, Judge.

SEPTEMBER 29, 1925.

REHEARING DENIED JANUARY 15, 1926.

ACTION in equity by the trustee in bankruptcy of the defendant Olof Carlson, to set aside a conveyance of land by him to his wife and codefendant.  From a decree for the plaintiff, the defendants appeal.—*Reversed in part; affirmed in part.*

*William Mulvaney,* for appellants.

*Molyneux, Maher & Meloy,* for appellee.

VERMILION, J.—In 1901, the appellant Olof Carlson purchased the land in controversy, and it was conveyed to him.  He continued to hold the title until October 20, 1921, when he conveyed it to his wife, the appellant Anna Carlson, for a stated consideration of $16,000, subject to a mortgage of $13,000, which the grantee assumed.  On November 15, 1922, Olof Carlson filed a voluntary petition in bankruptcy, and appellee is the trustee in bankruptcy of his estate.  The action is by the trustee, to set aside the conveyance of the land to the wife, Anna Carlson, as being in fraud of creditors.  The claims allowed against the estate amount to about $18,000, and the assets to about $1,800.

1. FRAUDULENT CONVEYANCES: husband and wife: knowledge of fraud.

It is the claim of appellants that the conveyance was made in satisfaction of a debt owed by the husband to the wife for money loaned by her to him, and that, in any event, forty acres of the land was the homestead of the appellants at the time of the conveyance to her, and continued to be such homestead, and is exempt to her.  The questions presented are largely ones of fact.

I.   The evidence on the part of appellants tends to show
that Anna Carlson had $500 at the time she was married, and
received $1,000 from her father and brother at that time; that
later her father gave her about $1,000 at different times, and
she inherited $400 from his estate, to which a brother added
$400; and that she inherited $1,800 from a brother, all of which
amounts she turned over to her husband.   It is the aggregate
of these sums, with interest, which it is claimed by appellants
constituted the consideration for the conveyance of the land to
the wife.

We are of the opinion that the evidence establishes a fraud-
ulent purpose on the part of the appellant Olof Carlson in mak-
ing the conveyance.   The land is situated in Cherokee County,
and the appellants resided in O'Brien County, and Olof Carl-
son did business at banks and with merchants in the latter
county.   He was indebted to a considerable amount at the time
of the conveyance, and contracted further indebtedness there-
after.   He owned no other real estate.   The deed was of record
in Cherokee County, but those with whom he dealt in O'Brien
County had no actual knowledge of it, and credit was extended
to him, both before and after the conveyance, in reliance on his
ownership.   The evidence shows that, after the conveyance to
his wife, he continued to represent that he was the owner of the
land.   After the execution of the deed, he made a property
statement, for the purpose of obtaining credit at a bank, in
which he included the land in question, stating that he owned
it, that the title was in his name, and that it was worth $40,000.
He testified that the land was not included in the statement
when he signed it, but the statement itself contains irrefutable
evidence to the contrary.   The statement showed his debts to
exceed the value of his personal property by over $500, and it
was only by including $27,000 as the value of the land above
the mortgage that a net worth of $26,455 was shown.

Still later, at a time when his son was a tenant on the land
in question, for the purpose of giving the son credit at the
bank he executed a written waiver of a landlord's lien on the
property of the son in favor of the bank, in which he stated
that the farm was his.   There are other circumstances which
support our conclusion.

But the wife, if the creditor of her husband, had a right, acting in good faith, to secure payment of her debt, although thereby the claims of other creditors would be defeated; and even knowledge. that her husband was actuated by a fraudulent purpose would not avoid the conveyance to her if she acted in good faith for the purpose of securing payment of her claim, and not for the purpose of aiding the fraud. *Rosenheim & Son v. Flanders,* 114 Iowa 291; *Steinfort v. Langhout,* 170 Iowa 422; *Keosauqua State Bank v. Hartman,* 184 Iowa 961; *Ford v. Ott,* 182 Iowa 671; *Halloran v. Halloran,* 195 Iowa 484; *Grant v. Cherry,* 199 Iowa 164; *Barks v. Kleyne,* 198 Iowa 793. Was the wife the creditor of the husband?

"Where the wife allows the husband to take and use her property for the support or use of the family or otherwise, without an agreement on his part to pay her therefor, the relation of debtor and creditor does not exist, and a conveyance made on account of the use of such property is voluntary, and invalid as against other creditors * * *." *Carr v. Way,* 141 Iowa 245.

See, also, *Romans v. Maddux,* 77 Iowa 203; *Carbiener v. Montgomery,* 97 Iowa 659; *Moore v. Orman,* 56 Iowa 39; *Shaw & Kuehnle v. Manchester,* 84 Iowa 246. There was no note or other written obligation to repay.

We are constrained to say, notwithstanding the testimony of the appellants to the effect that the amounts turned over to the husband by the wife were loans, that the money was given to the husband for such use for the benefit of the family as he might see fit, and with no agreement, or expectation on the part of either, that it should be repaid; that she was not the creditor of her husband; and that the conveyance to her was voluntary, and invalid as against the trustee in bankruptcy of the husband. Anna Carlson testified, on a prior occasion in the bankruptcy court, that she was giving the money to her husband to help them along in their business. When asked if she expected him to pay it back, she said:

"I don't know as I had any expectations at that time; I just simply thought it was helping us along."

She testified that she did not know what her husband did with the money; that it went into use for the family, for the

*[margin note: 2. FRAUDULENT CONVEYANCES: husband and wife: when wife not creditor.]*

home; that she did not keep any records of the money she turned over to her husband; that it was an understood thing that it was to go into the making of a home for them. This is not only the admission of a party to the record, the present claimant of the land, but is directly contradictory of much of her testimony on the trial. She also testified on the trial below:

"I don't know as there was really any promise made."

There is some claim on the part of appellants that the money of the wife was used to pay for the land. The claim is not borne out by the record. The wife testified that a deposit to her husband's credit in a bank in February, 1902, of $1,640, which was used by him on the following day in paying a note given at the time the land was purchased, came from her, and that the bank's records showing a different source were wrong. She only claimed to have loaned her husband $5,100. She testified that $1,500 of this was loaned shortly after their marriage in 1885; that $1,000 was received from her father at different times during his life, and the remainder came from the estate of her father, and from her brother in 1906, and from another brother's estate in 1905. She also testified that the money received at the time of her marriage was not deposited in a bank by either her or her husband; that she carried it in her pocket while she had it, and he carried it until he used it.

II. The appellants lived on a rented farm in O'Brien County until about the time the petition in bankruptcy was filed. Anna Carlson testified on the trial:

"I don't know just when the petition in bankruptcy was filed. We had a large share of our stuff there, though, when the petition in bankruptcy was filed. We quit sleeping at the McCarroll farm [the rented farm] after the middle of November, and the main part of our stuff was moved to this quarter section by the middle of November; but we continued to stay nights at the McCarroll place after the middle of November."

Actual occupation of the premises as a home is required, except in cases of temporary absence, to support a claim of homestead; mere use or cultivation is not sufficient. *Davis,*

3. HOMESTEAD: acts constituting: non-occupancy. *Moody & Co. v. Kelley,* 14 Iowa 523; *Maguire v. Hanson,* 105 Iowa 215; *Blue v. Heilprin,* 105 Iowa 608. It is clear that there was no such actual

occupancy of the land in question as a home by appellants as would constitute any part of it a homestead prior to the incurring of the indebtedness to the creditors represented by the trustee. Section 2976, Code of 1897 (Section 10155, Code of 1924). By Section 70e of the Bankruptcy Act (30 Stat. at L. 565, Ch. 541, Sec. 70; U. S. Comp. St., Sec. 9654), it is provided that:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided * * *."

III. The decree required the appellants to account for the rents and profits of the land for the season of 1922, and judgment was rendered against them for $1,280. Without expressing an opinion as to the right to such a judgment upon a proper showing, we find no evidence in the record to sustain it. There is testimony as to the rental value of lands in the vicinity, but no showing as to the rental value of the land in question, or that it was similar to other lands in the vicinity.

4. PLEADING: issues, proof, and variance: failure of proof.

The judgment of $1,280 is reversed, and otherwise the decree is affirmed, with costs.—*Reversed in part; affirmed in part.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.