KEOSAUQUA STATE BANK, Appellant, v. WALTER A. HARTMAN et al., Appellees.

HOMESTEAD: Promise to Execute Mortgage. A promise by the
1  husband, at the time of contracting loans of money to execute a mortgage on his homestead, especially when the husband's wife did not join therein, generates no equitable interest in the promisee in said homestead.

HUSBAND AND WIFE: Husband Preferring Wife as Creditor. A
2  good-faith conveyance of property by a husband to his wife, in payment of a concededly just debt, is unassailable, even though other creditors of the husband are unprovided for.

FRAUDULENT CONVEYANCES: Preferential Conveyance by Hus-
3  band to Wife. A good-faith conveyance of property by a husband to his wife, in payment of a concededly just debt, is not impeached by the fact that the husband, prior thereto, and unbeknown to the wife, had included said property in a property statement to another creditor; and especially so when such property was, in truth, the homestead of the said husband and wife.

*Appeal from Wapello District Court.*—C. W. VERMILION, Judge.

NOVEMBER 16, 1918.

PLAINTIFF brings this action for recovery upon a promissory note made by the defendant Walter A. Hartman, and to establish a lien therefor upon a certain house and lot which the defendants, husband and wife, claim to be exempt to them as a homestead. The trial court entered judgment for plaintiff, as prayed, on the note, but denied the prayer for equitable relief; and from this ruling the plaintiff appeals. The facts, so far as material, are stated in the opinion.—*Affirmed.*

*J. C. Mitchell* and *Sloan & Sloan,* for appellant.

*Gillies & Daugherty,* for appellees.

WEAVER, J.—The property in question is in the town of Eddyville, and, for a number of years prior to the spring of 1914, had been used and occupied by the defendants as their homestead. About the date named, the wife received from her mother's estate the sum of about $1,300. Of this money she furnished her husband $1,000, which both testify he agreed to repay. Taking this money, defendant went to Keosauqua, where he purchased a small grocery business, and continued therein until the fall of the following year. In June, 1914, the wife rented the homestead, and went to Keosauqua, where she remained with her husband, living in rented property, until about August, 1915, when she returned to and occupied the Eddyville home. Soon after beginning business at Keosauqua, the husband borrowed $300 at the plaintiff bank. This amount was increased by subsequent borrowings, until the indebtedness to the bank in October, 1915, amounted to $950. At some time during these transactions, and evidently as a basis of credit, defendant made a written property statement, in which was an item of

"house and lot at Eddyville, $1,200." It is the claim of the
appellant bank that, on the renewal of the first loan, and
again on later occasions, down to the time of the last loan,
the defendant husband promised that, if it was thereafter
demanded of him, he would secure the indebtedness by a
mortgage on the Eddyville property. On November 14,
1915, three months after the wife had resumed her home up-
on this property, the appellant's cashier called upon the
husband at his store, notifying him that the bank desired a
mortgage, according to his promise, and gave him three
days in which to attend to the matter. On the third day,
he made a general assignment for the benefit of his credi-
tors. In this assignment he did not schedule the Eddyville
property as an asset, nor the amount due his wife for
money furnished him, as a debt. It should also be said that
the last renewal and last loan made to the husband was a
month or more after the wife had returned to Eddyville;
but the fact of such return, the bank says, was not known
to it. On November 20, 1915, the husband made a deed to
his wife, conveying the house and lot in alleged payment of
his debt to her. There is no claim that the wife ever made
or joined her husband in making any promise to mortgage
the property. She testifies that she was never informed
or had notice that the bank wanted a mortgage on this
property until after she had returned to the possession of
the home, and that she promptly refused to consent. The
first direct request or demand made to her for such security
was after her husband's assignment for the benefit of
creditors. This she also refused, and on the same day, the
husband made her the deed to which we have referred. The
husband, as a witness, also denies that he ever promised to
mortgage the home property, and says that the cashier,
with whom he dealt, never suggested the taking of a mort-
gage until the date of the last renewal, in October, 1915,
and that then he did not understand the request or demand

to be for a mortgage on the homestead, but a mortgage on the store or stock of goods; and that he thought that it was this proposition which he was given time to consider.

The trial court, having heard the evidence, dismissed the plaintiff's petition for equitable relief.

In this conclusion we think the court made no mistake. We are of the opinion, in the first place, that the evidence is insufficient to support a finding that the homestead had been abandoned; and in the next place, we

1. HOMESTEAD: promise to execute mortgage.

agree with the trial court's finding that, even if an abandonment did take place and exist from the time the wife and children moved from Eddyville, in May, 1914, until they returned there, in August, 1915, it is still true that a homestead right did exist from and after the last-named date. Now, the testimony of the cashier, who alone dealt with the defendant, goes no further than that the cashier, on one or more occasions, said to the defendant, when the latter was borrowing money, that the loan committee of the bank might insist upon security, and asked if, in such event, he would be "willing to give a mortgage," and defendant answered in the affirmative. This, upon the bank's own showing, was the attitude of the parties until and including the last extension of credit, in October, 1915. No call or demand for a mortgage was made until November, 1915, at which time there can be no doubt of the homestead character of the property. No agreement on the part of the wife to unite with her husband in subjecting the homestead to such burden is shown, nor is there any apparent ground upon which the court can hold her to be estopped in equity to insist upon the protection which the statute has erected about the home of herself and her children. By no stretch of the equitable powers of the court can it be held that the husband's promise to make a mortgage at some indefinite time in the future, in the event that the bank committee should decide to call for it, operates to effect a lien upon the property superior to a homestead

right attaching before a mortgage is demanded. Nor is the position of the plaintiff materially strengthened or bettered if, conceding the homestead right to date only from August, 1915, it appears that the indebtedness due the bank originated prior to that date; for, before such debt was reduced to judgment, or became in any manner a lien on the property, said property·had been conveyed to his wife, in payment of a concededly just debt. As between his two creditors, the bank and his wife, defendant had the legal right to prefer her, and to satisfy her demand by the conveyance of this property, the value of which is shown not to materially exceed the amount which was her due. Such transfers of property between husband and wife will, of course, be closely scanned, and, if fraud appears, will be set aside at the suit of creditors; but if the debt in payment of which the conveyance is made is fairly shown to have been contracted in good faith, the mere fact that the grantee is the debtor's wife affords no ground for equitable interference. *Jones v. Brandt,* 59 Iowa 332; *City Bank v. Wright,* 68 Iowa 132; *Farmers' Nat. Bank v. Warner,* 68 Iowa 147; *Sims v. Moore,* 74 Iowa 497; *Rockford B. & S. Mfg. Co. v. Mastin,* 75 Iowa 112; *Payne v. Wilson,* 76 Iowa 377; *Citizens' Nat. Bank v. Webster,* 76 Iowa 381; *Muir v. Miller,* 103 Iowa 127.

2. HUSBAND AND WIFE: husband preferring wife as creditor.

Much is said by the appellant in argument to the effect that defendant fraudulently misrepresented and concealed his real financial condition from the plaintiff bank. This is based largely upon the showing that defendant, in making a statement of his property, included therein his homestead, and did not inform the bank of the debt due his wife. So far as the inclusion of the homestead in his statement is concerned, there is no apparent reason for saying that it was inspired by any fraudulent purpose. The ownership of a homestead, even though

3. FRAUDULENT CONVEYANCES: preferential conveyance by husband to wife

it is not subject to the payment of debts, may well be accorded some weight in giving the owner standing and character in the business world; and, as there is no pretense that the defendant was ever asked for any information on the subject, or made any false statement or representation with respect thereto, his listing of the property can hardly be stamped as a fraudulent act. The omission to speak of the debt due his wife is more justly subject to animadversion, though perhaps few husbands, if asked for a list of their creditors, would think it necessary to mention their wives; and it is open to doubt whether, had he revealed the fact to the bank, it would have made any difference in its extension of credit to him. But whatever may be said or thought upon this subject, there is no evidence of any kind that the wife in this case knew of the representations or is chargeable with any act or neglect which bars or estops her from asserting her rights, either as a wife, having an interest in the family homestead, or as creditor of her husband, having the same right as other creditors to secure or collect a bona-fide claim against him, even though it may result in rendering him less able to pay or discharge his other debts.

We find no reason for interfering with the decree rendered below, and it is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.