BOTNA VALLEY STATE BANK, Appellant, v. A. M. GREIG et al., Appellees.

**FRAUD:** Nonerror in Refusing to Submit Supported Fraud. When the evidence is *sufficient* to show that a conveyance by a debtor husband to his nondebtor wife is fraudulent as to an attaching creditor, and *insufficient* to charge an intervener with fraud in taking a conveyance of the same property from the wife, then the court will not commit prejudicial error if it wholly excludes from the jury all issues of fraud.

**PLEADING:** Amendment After Reversal. An intervener who lays claim to attached property, under a plea that he took conveyance from plaintiff's debtor and the latter's wife, may, after reversal in the Supreme Court, amend, and plead that the property in question

was first conveyed by plaintiff's debtor to said debtor's wife, and that said wife later conveyed to him (intervener).

**FRAUD:** **Declarations of Grantor.** Declarations of a grantor tending to show fraud, not made in the presence of the grantee, are inadmissible.

*Appeal from Mills District Court.*—J. B. ROCKAFELLOW, **Judge.**

DECEMBER 14, 1920.

ACTION upon a promissory note for $4,000, dated January 26, 1914, aided by attachment. C. F. Maynes intervened, claiming, under a written contract of purchase, to be the owner of the property attached, which was a crop of corn standing in the field. There was a verdict in favor of the intervener, and plaintiff appeals. There is no controversy between plaintiff and the defendants. For the opinion upon a former appeal of this case, see *Botna Valley St. Bank v. Greig*, 182 Iowa 662.—*Affirmed.*

*John Y. Stone* and *C. E. Dean*, for appellant.

*Genung & Genung*, for appellee.

STEVENS, J.—The intervener alleged in his petition that he purchased the corn, with the land upon which it was grown, from Olive M. and A. M. Greig, on September 2, 1914, for an adequate consideration, before the levy of the writ upon the corn, and without notice thereof. Plaintiff, answering the petition of intervention, alleged that the pretended contract of purchase by the intervener was fraudulent, and for the express purpose of aiding the defendant A. M. Greig to defraud his creditors. After the former appeal and reversal, the intervener amended his petition in intervention, alleging that, on August 13th, the defendant A. M. Greig conveyed the farm upon which the corn in question was grown, without reserving same, to Olive M. Greig, his wife. In answer to this amendment, plaintiff alleged that said conveyance was voluntary, wholly without consideration, and for the purpose of hindering and delaying the creditors of A. M. Greig.

1. FRAUD: non-error in refusing to submit supported fraud.

The court submitted the question as to whether the corn was mature on August 13th, the date on which said conveyance was made, and also as to whether the corn was mature on September 2d, but did not submit either of the issues of fraud set up in the answer of plaintiff to the original petition in intervention, and an amendment thereto. The court did, however, instruct the jury that, unless the corn was, on the dates above named, so far matured that it no longer drew sustenance from the soil, it passed with the deed from A. M. Greig to his wife, and that, if it still drew sustenance from the soil on September 2d, it remained as a part of the real estate, notice to plaintiff was unnecessary, and intervener would be entitled to receive the proceeds of the corn which had, by agreement, been sold, and the proceeds deposited to await the outcome of this litigation.

The court further instructed the jury that, as the written contract between the defendant A. M. Greig and his wife and the intervener was not acknowledged and recorded, as required by Code Section 2906, it was invalid, as against the creditors of A. M. Greig without notice thereof at the time of the levy of the writ. No exceptions were taken by either party to any of the instructions given, and so far, therefore, as they submitted the issues to the jury, they must be treated as stating the law of the case. Neither did either party request instructions of the court. Appellant did, however, except to the failure and neglect of the court to submit the issues of fraud hereinbefore stated. These exceptions present the principal questions for review.

I.   No direct evidence was offered upon the subject, but the facts and circumstances were sufficient to raise an inference that the conveyance of the farm by A. M. Greig to his wife, Olive M., was without consideration, and that he was at the time practically bankrupt. Whether the failure of the court to submit this issue to the jury was prejudicial to appellant depends upon the further question whether the evidence was sufficient to require the submission to the jury of the issue of fraud in the transaction between Olive M. and A. M. Greig and intervener.

The court peremptorily charged the jury that as, at the time the writ was levied, the written contract between the above-named parties was not acknowledged or recorded in the

office of the county recorder, it was immaterial whether it was entered into in good faith and without consideration, as it was, under Section 2906, supra, invalid, as against the creditors of Greig. It appears from the evidence that this contract was executed some time during the forenoon of September 2d, and that the writ was levied upon the corn on the afternoon of the same day. In reality, the only question of fact submitted to the jury was whether the corn covered by the attachment had, by ceasing to draw sustenance from the soil on August 13th, and again on September 2d, become personal property. So far as appears from the record, plaintiff, at the time the writ was levied, had such notice of the conveyance to Olive M. Greig of the premises upon which the corn was grown as was imparted by the record of the deed. This instrument *prima facie* conveyed title, and counsel for appellant practically concede that the crop was then drawing sustenance from the soil, and that, if the conveyance was valid, title to the corn passed to the purchaser. This being true, the transaction between the Greigs and intervener does not come within the provisions of Section 2906 of the Code. Plaintiff was not one of Olive M. Greig's creditors; and, unless the transaction which she had with intervener was for the purpose of assisting to defraud the creditors of her husband, of which purpose intervener either had such knowledge or notice of such facts as should have put him upon inquiry, the contract was valid, and in all respects binding. *Tenold v. Klimesh,* 160 Iowa 410; *Atkinson v. McNider,* 130 Iowa 281; *Witham v. Blood,* 124 Iowa 695; *Jones v. Hetherington,* 45 Iowa 681; *Lyons & Dickey v. Hamilton,* 69 Iowa 47; *Richards v. Schreiber C. & W. Co.,* 98 Iowa 422. It is not enough for an attaching creditor to show merely that the seller intended by the sale to hinder and delay creditors, but it must also be shown that the purchaser participated therein, or had knowledge of such facts as should have put him upon notice of the fraudulent purpose and intention of the seller.

While the law, as thus stated, is not referred to in the brief of counsel, their contention impliedly recognizes these principles. Upon the former appeal, after a careful review thereof, the court held that there was sufficient evidence of fraud in the

transaction between the Greigs and intervener to require submission of that issue to the jury.

The facts upon the second trial are different in several material respects from the facts as set out in our former opinion. It is true that the contract between the Greigs and intervener recites that the only incumbrance upon the farm is a mortgage of $17,000. So far as appears from the record, this statement was true at the time the contract was written. After the parties had come to terms, intervener and A. M. Greig went to Hastings, where Maria Greig lived, and paid a second mortgage of $4,500 held by her. This was on the same day, but before the contract was executed.

The contract before us specifically refers to the crop of corn in controversy. Further, the record discloses, without conflict, that the consideration expressed in the contract was about the fair market value of the land. It is true that the contract recites that the consideration over and above the $17,000 mortgage was to be paid in cash, and that the only cash in fact paid was the mortgage held by Maria Greig. On the same day, intervener conveyed a livery barn and stock owed by him in Malvern to Olive M. Greig, in lieu of cash for the balance of the purchase price. The parties had a right to treat this property as cash, in making their contract, and the fact that they did so is no evidence of fraud. The payment to Maria Greig was by two checks signed by intervener, one of which, for $1,500, was made payable to A. M. Greig. No reason therefor is shown in the record, but it appears therefrom that the check was indorsed by A. M. Greig and left with his mother, who later also indorsed her name on the back thereof, before payment. The evidence does not show that A. M. Greig received any part of this money. Plaintiff's petition was filed on September 2d, and, so far as revealed by the record, neither the Greigs nor intervener knew that plaintiff was about to commence suit upon the note, which was some weeks past due, or that the levy of a writ of attachment upon the property was contemplated. Nor is it shown that intervener knew of the indebtedness of Greig to plaintiff, or that he was seeking to place his property beyond the reach of creditors.

Olive M. and A. M. Greig, in the order stated, are designated

in the contract as parties of the first part. Intervener had re-
sided in Mills County for a quarter of a century, had long
known the Greigs, and was familiar with the farm in question.
The contract was signed on Wednesday, and, on the preceding
Sunday, the farm was inspected by intervener. It is true that
the parties apparently got together on terms in the forenoon
of September 2d, and drove from the Greig home to Hastings,.
about 7 miles, where Maria Greig lived, to pay her mortgage,
and then to Malvern, a distance of 5 miles, where the contract
was prepared and signed. Mrs. Greig went directly from her
home to Malvern. The contract required the first parties to
furnish abstract showing "a clear record title, except one mort-
gage of $17,000," and to give possession of the farm on or before
July 1, 1915. The consideration for the sale of the corn was
not recited in the contract, but the parties testified thereto.
Intervener was not quite clear as to the exact amount of the
livery stock, and there was some confusion in his testimony
regarding a balance due on a book account which formed a part
of the consideration therefor; but there is no substantial con-
flict in the evidence upon this point, and the consideration is
well established. So far as disclosed by the record, the trans-
action between the parties was consummated according to the
contract. At most, the evidence, as it appears in the record
now before us, casts some suspicion upon the good faith of the
parties to the contract. The transaction was not, however,
unusual, although less time was occupied therein than often ap-
pears; but the evidence fails in several material respects to
show fraud upon the part of intervener, or knowledge of facts
and circumstances that should have put him upon inquiry as
to the good faith of Greig. The burden rested upon the plaintiff
to show fraud in the transaction. *Freeman v. Strobehn,* 122
Iowa 157, 160; *Fifield v. Gaston,* 12 Iowa 218; *Clark Bros. v.
Ford,* 126 Iowa 460.

The instructions, as a whole, were not unfavorable to the
plaintiff. The evidence, as stated, was insufficient to justify
the submission of the charge of fraud set forth in plaintiff's
answer to intervener's original petition, and, therefore, the
failure of the court to submit the issue of fraud tendered by
the answer to the amendment thereto was not prejudicial.

II.   Intervener, as stated, filed an amendment to his original petition after the cause was reversed upon the former appeal, and plaintiff, for further answer thereto, alleged that same was inconsistent with the theory upon which the first trial was had, which treated A. M. Greig as the owner of the land; and no claim was made that Olive M. Greig was the owner thereof, or had any other interests therein than as the wife of A. M. Greig.   The amendment was not assailed by motion or demurrer, and no question was presented thereby for the jury. The position taken by intervener was not inconsistent with that taken by him on the former trial.   He was entitled to show that the corn had passed with a conveyance of the land to his grantor before the levy, and that, so far as he had notice at the time of purchase by him, it was in good faith.

2. PLEADING: amendment after reversal.

III.   Complaint is also made of the exclusion of certain statements claimed to have been made by A. M. Greig, relative to his intentions and good faith in the sale to intervener; but these statements were not made in the presence of intervener, nor were they binding upon him, and their exclusion, therefore, if erroneous, was, in view of the conclusion announced above, without prejudice to appellant.

3. FRAUD: declarations of grantor.

Other matters are discussed by counsel, but they present no ground for reversal.   The case has been twice tried.   The first time, the jury returned a verdict in favor of intervener by direction of the court; and, while we are of the opinion that the court may well have submitted to the jury the issue of fraud as to the conveyance between the husband and wife, nevertheless, in the absence of evidence justifying the submission of the issue of fraud presented by the answer to the amended petition in intervention, the error was without prejudice.   It follows that the judgment of the court below must be and is—*Affirmed.*

WEAVER, C. J., LADD and PRESTON, JJ., concur.