M. P. HALLORAN, Appellant, v. W. A. HALLORAN et al., Appellees.

FRAUDULENT CONVEYANCES: Allowable Preference. A creditor may, when actuated by the *sole* purpose of collecting his claim, take a transfer of *all* of the debtor's property at a fair valuation, even though such transfer will wholly defeat other equally meritorious but less diligent creditors. So held in an action by one creditor, to set aside a transfer of corporate stock.

*Appeal from Polk District Court.*—J. D. WALLINGFORD, Judge.

MARCH 13, 1923.

ACTION on creditor's bill, to vacate and set aside a transfer of corporate stock from the judgment debtor, W. A. Halloran, to the appellee Caroline Urban. The decree sought was refused, and plaintiff appeals.—*Affirmed.*

*W. H. McHenry* and *Corwin R. Bennett,* for appellant.

*Tomlinson & Maley,* for appellees.

FAVILLE, J.—The appellant and the appellee W. A. Halloran are brothers. At a time long prior to the events disclosed in the record, the appellant loaned to his brother, the appellee, a certain sum of money, and on the 20th of September, 1921, the appellee confessed judgment in favor of the appellant in the district court of Polk County, Iowa, for the amount due on said indebtedness, in the sum of $2,284. It appears that execution was issued on said judgment, and was returned unsatisfied. Prior to the time the said judgment was obtained, the appellee W. A. Halloran was engaged in publishing a paper known as the "Western World." The paper was published by a corporation called the "Western World Publishing Company," in which said W. A. Halloran was a stockholder. He owned 200 shares of stock of the par value of $10,000. He transferred all of said stock to the co-appellee, Caroline Urban, on the 20th of May, 1921. It is to vacate and set aside this transfer of stock from the appellee W. A. Halloran to Miss Urban that this action is brought.

It appears from the record that W. A. Halloran was actively engaged in the management of the said publishing company. Caroline Urban was employed by said company, and had been so employed some 12 or 13 years. She was drawing a salary of about $100 a month. It is the contention of the appellees that, in January, 1921, the Western World Publishing Company was indebted to Miss Urban in approximately the sum of $1,150, and that she was threatening to leave the employ of the company, and that at said time an oral agreement was entered into between the appellees to the effect that, if Miss Urban remained in the employ of the publishing company, the appellee W. A. Halloran would personally assume the payment of the indebted-

ness of the said company to her, and would see that she was paid the amount due and to become due her from the publishing company. Relying on this promise, she remained in the employ of the publishing company.

On or about the 19th of May, 1921, the appellant wrote a letter to the appellee W. A. Halloran, in which he said:

"You have not replied to my last letter. I am intensely in earnest about this matter and must have a payment at once or I must proceed to protect myself."

The evidence tends to show that W. A. Halloran received said letter on the 20th of May, and on the said 20th of May, he assigned the stock in question to Miss Urban. At the time of this assignment, W. A. Halloran and Miss Urban were engaged to be married, and they were so engaged at the time of the trial. The evidence tends to show that the shares of stock assigned, while of the par value of $10,000, were of a market value of not more than $1,150. It also appears that the exact amount due from the publishing company to Miss Urban on the 20th of May, 1921, was not definitely ascertained, but that it was approximately the sum of $1,150. It appears that the publishing company had no personal property except some office furniture, a small safe, and a typewriter, worth, all told, less than $100. It did not own any real estate.

The appellees were examined on summary proceedings before this action was instituted, and there is evidence tending to show that the transfer of the stock on the stock book of the company was made after the hearing in said summary proceedings. It also appears that Miss Urban knew of the indebtedness of W. A. Halloran to the appellant, before said assignment, and it likewise appears that the appellee W. A. Halloran had no property except said shares of stock.

The foregoing are the main facts relied upon by the appellant as sustaining his claim that the transfer of the stock from W. A. Halloran to Miss Urban was fraudulent, and that the same should be set aside, and the said stock subjected to satisfaction of appellant's judgment.

I. The first question for our consideration is whether or not, under this state of facts, the appellee Miss Urban was the bona-fide creditor of her co-appellee, W. A. Halloran. It is un-

disputed, under the record, that the original indebtedness to
Miss Urban was incurred by the corporation the Western World
Publishing Company. The appellee W. A. Halloran was the
principal owner of the stock of said corporation, and was ac-
tively engaged in its management. He, of all persons, was most
vitally concerned in the success of said corporation. It appears
without dispute in the record that the appellee Miss Urban had
been employed by said corporation for a considerable period of
time, and that she had received a portion of her salary each
month, but that the publishing company had become in arrears,
so that they were owing her approximately $1,150. It also ap-
pears without dispute that she was about to leave the employ
of said company, and that W. A. Halloran persuaded her to re-
main in the service of said company by reason of his promise
to be personally liable to her for the amount due her as salary
from the publishing company, and upon his agreement to pay
her said amount. The evidence shows that she relied upon this
promise, and remained in the employ of the publishing company
thereafter because thereof. Such a contract was legal, based
upon a valid consideration, and one which, when properly
proved, is enforcible. It therefore necessarily follows that,
after the making of said agreement between said parties, Miss
Urban became legally the creditor of W. A. Halloran, and was
such at the time of the transfer of the shares of stock to her
on May 20, 1921.

II.   In actions of this character, to set aside a transfer of
property on the ground of fraud, a different rule obtains where
the transferee is the creditor of the transferor than where the
transferee is a purchaser of the property. The distinction was
clearly pointed out by us in *Rosenheim & Son v. Flanders Sis-
ters*, 114 Iowa 291, wherein we said:

"A creditor acting in good faith may take security from
his debtor, even though he knows there are other creditors, and
that the effect of the debtor's action will be to defeat them.
*Carson v. Byers*, 67 Iowa 606; *Crawford v. Nolan*, 70 Iowa 97.
He is even protected in such case although he knows the debtor
is prompted by a fraudulent intent. *Chase v. Walters*, 28 Iowa
460; *Aultman v. Heiney*, 59 Iowa 654; *Stroff v. Swafford*, 81
Iowa 695."

In *Steinfort v. Langhout,* 170 Iowa 422, we said:

"Where the sale is made to a creditor of the alleged fraudulent vendor, and is made in satisfaction of a bona-fide debt, and is done in good faith, in payment of the debt, other creditors cannot complain, even though it appear that the vendor had a fraudulent purpose in making the transfer, and even though the vendee knew of this fraudulent purpose."

Of course, it is also the rule that, even though the purchaser is a bona-fide creditor, if such purchaser knows of the fraudulent intent of his vendor, and with such knowledge takes the transfer of the property, not in good faith, for the purpose of securing or paying his debts, but for the purpose of aiding his vendor in an attempt to defraud other creditors, he cannot be protected.

Applying these rules to the facts of this case, we find that the appellee Caroline Urban was the bona-fide creditor of the appellee W. A. Halloran; that the transfer of the corporate stock in question was taken by her in good faith, and for the purpose of payment of a bona-fide indebtedness due to her; that the value of the stock so transferred was substantially equal to the amount of the indebtedness then due her; and that the evidence fails to show that the appellees, in making said transfer, acted with a fraudulent purpose, and with intent to defraud the appellant.

It must be conceded that, upon the fact question involved, the case is close. The fact that the transfer was made immediately after the receipt of the letter from the appellant, demanding payment and threatening suit; the fact that the assignment of the stock transferred all of the property owned by the appellee W. A. Halloran; the fact that the transfer of the stock was not immediately made upon the stock book of the corporation; and the fact of the intimate relation existing between the appellees at the time, with other matters, are all proper to be considered, in determining whether the transfer was fraudulent. We think, however, that, under all of the facts and circumstances disclosed in the record, there was insufficient evidence to impeach the *bona fides* of the transfer of this stock to the appellee Miss Urban. We find that she was the bona-fide creditor of W. A. Halloran; that the value of the property transferred to her did

not exceed the amount of said indebtedness; and that the transfer was made in good faith, for the express purpose of paying said indebtedness. The appellee W. A. Halloran was confronted with ''a divided duty.'' That he should have preferred to pay his fiancee, rather than his brother, is not altogether unnatural, nor is it of itself a sufficient badge of fraud to impeach the good faith of the transaction.

We concur in the result reached by the trial court, and the decree appealed from is—*Affirmed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.