Wood Carriage & Auto Company et al., Appellants, v. E. J. Cordle et al., Appellees.

**FRAUDULENT CONVEYANCES:** Evidence—Consideration.  A conveyance in liquidation of the indebtedness of the grantor to the grantee, not fraudulent in fact, will not be set aside at the instance of other creditors if the consideration is adequate.  Evidence held insufficient to show such inadequacy of consideration as to establish fraud in law.

Headnote 1:   27 C. J. pp. 545 (Anno.), 830.

*Appeal from Hardin District Court.*—Sherwood A. Clock, Judge.

March 9, 1926.

Creditor's bill to subject certain real estate to the payment of judgments against the defendant E. J. Cordle.  The court dismissed the plaintiffs' petition, and they appeal.—*Affirmed.*

*Peisen & Soper,* for appellants.

*Aymer D. Davis,* for appellees.

Faville, J.—W. R. Cordle and Judy Cordle were married in 1896.  W. R. Cordle was by many years the senior of his wife.  At the time of his marriage to Judy, he had three children, one of whom is the appellee E. J. Cordle.  It appears that W. R. Cordle was not possessed of any substantial amount of property at the time of his marriage, but the wife, Judy, inherited a farm of 120 acres from her father, and received a certain amount of personal property, consisting of live stock and machinery, from the estate of her mother.  W. R. Cordle and his wife lived upon said farm belonging to Judy until about 1911, when Judy sold the personal property on the farm

to E. J. Cordle for $900, and she and her husband moved to the town of Union, and E. J. Cordle and his family remained upon and operated the said farm. There was a mortgage of $1,000 upon the premises, and on September 29, 1915, Judy and her husband conveyed the said premises to the said E. J. Cordle. The deed recited a consideration of one dollar "and the considerations set out below in this instrument." The recital of the deed is as follows:

"The considerations, conditions and terms above referred to are as follows: The grantee Edward J. Cordle, his heirs or legal representatives shall during each year of the natural lives of Judy Cordle and W. R. Cordle, and of the survivor of them, pay to them or the survivor of them, the annual sum of $500, as part consideration, $250 of which shall be paid on the first day of October and $250 on the first day of the succeeding February of each year, the 1st payment to be due October 1, 1916, without interest if paid when due. In case the land herein conveyed shall be resold during the life of either grantor, Judy Cordle and W. R. Cordle, then Edward J. Cordle or his heirs or legal representatives shall pay to Judy Cordle and W. R. Cordle or to the survivor of them, the sum of $16,000 which payment shall be the final payment of the consideration for this conveyance together with all the annual payments accrued to the time of such resale; and Judy Cordle and W. R. Cordle hereby reserve a lien on the land herein conveyed to secure the payment of all of the annual and final payments provided for herein; to be enforced as an equitable mortgage lien. The death of both Judy Cordle and W. R. Cordle shall extinguish all further indebtedness under this contract. Edward J. Cordle, his heirs, * * * shall pay all taxes and repairs."

The deed also recited that the said land was incumbered by a mortgage of $1,000, which the grantee assumed to pay, with interest. It appears that E. J. Cordle paid $200 on the purchase price of the live stock. W. R. Cordle died in May, 1921. On September 15, 1922, E. J. Cordle and his wife placed a mortgage of $8,000 on said premises. Judy joined in said mortgage, releasing her interest in the land. Of the proceeds of this loan, $4,000 was used to pay off a mortgage which E. J. Cordle had given on the premises, and the balance was used by

E. J. Cordle in the payment of his own obligations. During the time that the said E. J. Cordle occupied the said premises, he borrowed various sums from Judy, aggregating approximately $545. He was in arrears on annuities, prior to February 1, 1924, of $577.35. There was an annuity due under date of February 1, 1924, of $250. No interest had been paid on the $700 due on the purchase price of the personal property. The $8,000 mortgage was an amortization loan, and $702.90 was due thereon, and the unpaid taxes were $326.64. Computing the interest that had accrued on the $700 for the purchase price of the live stock, and other indebtedness which E. J. Cordle owed Judy, and the taxes and mortgage payment due, we find that there was approximately $3,800 of obligations owed to the said Judy and upon the said premises on or about February 1, 1924. On January 2, 1924, the said E. J. Cordle, by quitclaim deed, reconveyed the said real estate to the said Judy, and also on said date executed and delivered to the said Judy a bill of sale to certain personal property, consisting of live stock and machinery. The indebtedness of the said E. J. Cordle to appellants herein all accrued prior to the said 2d day of January, 1924, and judgments in behalf of each of said appellants were obtained on the 21st day of February, 1924. Appellants dismissed their petition, so far as any relief with respect to the bill of sale in controversy was asked.

The value of Judy's annuity under the original deed, computed in view of her expectancy at the time of the trial, would have been $5,641.62. The said Judy has died since said trial, and her administrators are substituted as appellees.

The annual payments necessary to carry the land, consisting of the annuity, the installments on the $8,000, and the taxes, were approximately $1,529.54. After the execution of the deed in question, E. J. Cordle continued in possession of the land. The value of the real estate was stipulated as from $175 to $200 per acre. It appears that the value of the improvements on the homestead was about $5,000. The contention of appellants is that the conveyance was voluntary and without consideration, and that they are entitled to have said real estate subjected to the satisfaction of their judgments.

There is no sufficient proof in the record to sustain a finding

of actual fraud in the making of this transfer. The grantor was, no doubt, heavily involved, and the prospect of his being able to pay all of his creditors in full was not encouraging. He owed his stepmother far more than any other creditor. The payment for the personal property purchased of her had been delayed for many years. The annuities were in arrears. Under the terms of the deed by which he held the property, in the event that he sold the same he was obligated to pay Judy in cash the sum of $16,000. There was an $8,000 mortgage on the premises, and the taxes and annuities had accumulated thereon. The grantor had a homestead right in the premises, and improvements of the value of approximately $5,000 were located on the homestead forty. Appellants' judgments could only be enforced as against the remaining eighty acres of land. Under all of the circumstances, we think there is no such inadequacy of consideration in the transfer as to show that the transaction was fraudulent. In fact, appellants make no allegation of fraud in their petition, but allege that the conveyance was "without consideration, or for a grossly inadequate consideration."

Cases of this character have frequently been before this court. In the recent case of *Shea v. Keith*, 200 Iowa 300, we said:

"The rule is well stated in *Farmers Loan & Tr. Co. v. Scheetz*, 196 Iowa 692, a case very similar to the one before us, where we said: 'A failing debtor may lawfully exhaust his property to secure or pay some of his creditors, leaving others unprotected, provided only that his purpose in so doing is not tainted with intent to hinder or delay the creditors left unsecured. The fraud, if any, does not consist in the sale or disposal of his property, simply because it has the effect to hinder or delay some creditors.' Numerous cases might be cited, holding to the same effect. Some of them are: *Mahaska County v. Whitsel*, 133 Iowa 335; *First Nat. Bank v. Eichmeier*, 153 Iowa 154; *State Bank v. Schutt*, 174 Iowa 583; *State Bank v. Wolford*, 178 Iowa 89; *Swanson Auto. Co. v. Stone*, 187 Iowa 309; *Farmers & Merch. St. Sav. Bank v. Kriegel*, 196 Iowa 833; *Davis v. Schwartz*, 155 U. S. 631 (39 L. Ed. 289)."

Every case must, of course, be determined by its own facts;

but a careful examination of the record in this case satisfies us that there was no such inadequacy of consideration in the transfer of the property in question as brands the transaction as being voluntary and fraudulent. There is no proof whatever of any intent on the part of the grantee to hinder or delay the creditors of the grantor. The grantor had a right to convey the homestead property without regard to appellants' claims, and the indebtedness of the grantor to the grantee was not so inadequate as to brand the transaction as voluntary, or to justify a court of equity in vacating and setting aside the transfer.

In the recent case of *Grant v. Cherry*, 199 Iowa 164, we said:

"In order to set aside a conveyance on the ground that it is fraudulent as against creditors, it must be shown that it was made by the grantor with intent to hinder and delay creditors. But a creditor, acting in good faith, may take security from his debtor or secure payment of his debt, although he knows that there are other creditors whose claims will thereby be defeated. And even knowledge on his part that the debtor is actuated by a fraudulent purpose is not sufficient to avoid the conveyance to him, if he acted in good faith and for the purpose of securing payment of his debt, and not for the purpose of aiding the fraud. *Rosenheim v. Flanders,* 114 Iowa 291; *Steinfort v. Langhout,* 170 Iowa 422; *Ford v. Ott,* 182 Iowa 671; *Halloran v. Halloran,* 195 Iowa 484. The insolvency of the grantor does not alone render his conveyance fraudulent. *Pieter v. Bales,* 126 Iowa 170; *Dickinson v. Davis,* 171 Iowa 29; *Keosauqua St. Bank v. Hartman,* 184 Iowa 961."

See, also, *Barks v. Kleyne,* 198 Iowa 793.

No useful purpose would be served by our setting out the evidence in greater detail. We are satisfied from the record that the indebtedness from the grantor to his stepmother, as claimed by the parties, was genuine and bona-fide. The deed providing for the annuities and the cash payment of $16,000 in the event that the land was sold, had long been of record. The proof as to the indebtedness for the personal property is satisfactory and unimpeached. If we take into consideration the homestead and the value of the improvements thereon, which was exempt to the grantor, there is no such inadequacy

in consideration as stamps the transfer with bad faith or fraud, or as being voluntary.

The conclusion of the trial court meets with our approval, and the decree appealed from must be, and it is,—*Affirmed.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.