CORN BELT SAVINGS BANK, Appellant, v. ALBERT B. BURNETT et al., Appellees.

FRAUDULENT CONVEYANCES: Intent of Grantor—Non-intent of Grantee. A mortgage by an insolvent debtor on non-exempt real estate and on certain other real estate, *on the condition that the court finds it not to constitute a homestead*, does not reveal such a distinctive badge of fraud as to condemn the entire instrument as fraudulent, it not appearing that the mortgagees joined in any fraudulent intent (if any) of the mortgagor's.

Headnote 1:  27 C. J. pp. 451, 507, 509.

Headnote 1:  32 L. R. A. 36; 12 R. C. L. 535.

*Appeal from Linn District Court.*—ATHERTON B. CLARK, Judge.

DECEMBER 14, 1926.

REHEARING DENIED MARCH 11, 1927.

The plaintiff, judgment creditor of Albert B. Burnett, brings this action in equity, to subject certain real property in Linn County to the payment of its judgment, and to have the lien thereof established as senior and paramount to the lien of a mortgage executed to and held by the Alburnett Savings Bank, for itself, and as trustee for Roscoe Billings, Hatch & Fish Company, Farmers Elevator Company, H. N. Rockwood, and Rosey F. Adams, the remaining defendants, except Mrs. Burnett. The court declined to grant the relief prayed, and the plaintiff appeals.—*Affirmed.*

*Johnson, Donnelly & Lynch,* for appellant.

*Crissman & Linville,* for appellees.

STEVENS, J.—The appellant, a banking corporation located at Cedar Rapids, is the owner of a judgment in the district court of Linn County against Albert B. Burnett, who is the husband of Jessie I. Burnett, a codefendant, for $4,201.82 and costs, which judgment, by the terms thereof, is a lien upon "all that part of the north half of the northwest quarter (NW¼) of Section twenty-five (25) and of the west half (W½) of the southwest quarter (SW¼) of Section twenty-four (24) lying east of the Illinois Central Railway Company's right of way (excepting one acre which is owned by Fred Atz) and the northeast quarter (NE¼) of the southwest quarter (SW¼) all in Township 85 north, Range 7 west of the fifth P. M."

The appellees other than the Burnetts are creditors of the judgment debtor, whose claims purport to be secured by a mortgage executed by the Burnetts, March 13, 1924, to the Alburnett Savings Bank, for itself, and as trustee for the remaining appellees. Said mortgage is on the above described real property, and *"also, in the event the same is not exempt to mortgagors or either of them as a homestead and is subject to the debts of them or either of them, and under no other conditions whatsoever, the southeast quarter (SE¼) of the southwest quarter (SW¼) of said Section twenty-four (24), it being understood that mortgagors claim the last above-described 40-acre tract as their homestead acquired and held prior to the year 1917."*

Appellant alleges in its petition that the said mortgage

was executed in fraud of creditors, and asks that the lien of its judgment be decreed senior and paramount thereto as to all of said property, and particularly the southeast quarter of the southwest quarter of Section 24. The claims of all the creditors named in the mortgage aggregate $22,967.52, which, with two prior mortgage incumbrances of $10,000 and $5,000, respectively, considerably exceeds the full value of the entire tract. The *bona fides* of the claims of the respective creditors named in the mortgage is not questioned in this court, but it is asserted by appellant that the provision of the mortgage quoted above and printed in italic, purporting to include the southeast quarter of the southwest quarter of Section 24 therein, was inserted with the intention and purpose on the part of all of the parties thereto of aiding and assisting the judgment debtor to hinder and delay his creditors, particularly the appellant.

The material facts disclosed by the record, summarized briefly, are, in substance, as follows: Albert B. Burnett and his wife, Jessie, resided for many years on the land in controversy, which was located near Alburnett, in Linn County. They moved from the farm in 1913, and did not again reside thereon until about January 1, 1924. During the period intervening, they resided in Alburnett and in Cedar Rapids, in each of which places they owned and resided in one or more residences. The residence property in Cedar Rapids was sold in 1918, and during the rest of the time prior to 1924 the Burnetts lived in rented property or at a hotel. The mortgage in controversy was executed by the Burnetts at the office of Crissman & Linville, attorneys at law, at Cedar Rapids, on March 13, 1924. At this time, Crissman & Linville were attorneys for Rosey F. Adams and the Hatch & Fish Company, and had been pressing Burnett for payment of their claims. They were not, however, attorneys for any of the other creditors named in the mortgage. The meeting at the office in Cedar Rapids on March 13, 1924, was at the request of Burnett, who personally notified the creditors named in the mortgage who were not represented by attorneys that he desired to meet them at the office of Crissman & Linville on the above date. The meeting, which was attended by the creditors or someone representing them, was held as planned. The Burnetts, at the time, claimed that the 40-acre tract on which the improvements were located was their homestead, and

therefore exempt from execution. This claim they asserted in their answer in this case, but the court found against them on this point, and reaffirmed the lien of appellant's judgment thereon.

The provision of the mortgage quoted above, which appellant contends shows on its face the fraudulent character and purpose of its execution, is, nevertheless, valid and binding, as between the parties thereto. Whatever claim Burnetts may have believed they had to an exemption of the 40-acre tract as a homestead was subject to be litigated at some future time, if creditors sought to subject the same to execution. The debtor and his wife had the right in good faith, and without fraudulent purpose or design to hinder and delay existing creditors, to mortgage the alleged homestead tract, subject to an agreement to have the question of its exemption from execution subsequently adjudicated. Such agreement was not prejudicial to creditors not preferred. He did not, however, have a right to enter into an agreement for the purpose of preferring certain creditors, and at the same time to cover up his property or conceal an interest therein for the purpose of hindering, delaying, and defrauding other creditors. The *bona fides* of the transaction, or the want thereof, is the test by which the validity of the mortgage provision must be determined. If the purpose and intention of Burnetts were to reserve an interest in the property for the intention and purpose of hindering and delaying existing creditors, and this intention and purpose were concurred in by the preferred creditors, or they had actual or constructive notice thereof, and the mortgage was not taken by them in good faith, and for the purpose of securing their claims, then the lien created thereby must be held subject to that of appellant's judgment. *Macomber v. Peck*, 39 Iowa 351; *Barks v. Kleyne*, 198 Iowa 793. No secret agreement of any kind between the parties was proven, unless the transaction as a whole justifies that inference. The terms and provisions of the mortgage are without ambiguity, and, as between the parties, were enforcible in equity. The finding of the court that no part of the trust was exempt to the debtor as a homestead is fully sustained by the evidence, and, but for the mortgage in question, it would be subject to execution for the satisfaction of appellant's judgment.

Mere suspicion of fraud is not sufficient to justify the set-

ting aside of a conveyance at the suit of a creditor. *Urdangen & Greenberg Bros. v. Doner,* 122 Iowa 533; *Smyth v. Hall,* 126 Iowa 627; *Steinfort v. Langhout,* 170 Iowa 422. To justify such action, the evidence of the fraud alleged must be clear and satisfactory. *Ray v. Teabout,* 65 Iowa 157.

It is conceded that Albert B. Burnett was insolvent at the time the mortgage was executed, and we think it fairly inferable from the record that appellees had knowledge thereof. The impression conveyed by the record is that the debtor desired to prefer certain of his creditors, and that he was actuated by this desire at the time the mortgage was executed; but this is immaterial if the creditors acted in good faith, and only for the purpose of securing their own claims. *Cox v. Collis,* 109 Iowa 270; *First Nat. Bank v. Eichmeier,* 153 Iowa 154; *Steinfort v. Langhout,* supra; *Carlisle v. Milliman,* 199 Iowa 949.

No direct evidence of a secret purpose or intention on the part of the Burnetts to cover up or reserve an interest in the mortgaged premises in order that they might hinder and delay other creditors is disclosed by the record. The fraud, if any is shown, appears upon the face of the mortgage and from the circumstances surrounding its execution. The mortgagors had a perfect right by a joint instrument to incumber their property, whether exempt from execution or not, and unless it was actually or constructively fraudulent as against existing creditors, its validity cannot be impeached in this action. It is not material that the mortgagees may have believed or even known that the premises were subject to execution, if the transaction complained of was had in good faith on their part, and to obtain security for their own claims only. We think the fair inference from the record is that the creditors were seeking every available source of security for their own claims. They could not compel the debtor to incumber his homestead, if he had one, but they were not prevented by the claims of other creditors from obtaining such lien thereon as the debtor was willing to give. The incumbrance upon the land far exceeds its value, and we are not convinced by the evidence that the mortgage in question was executed for a fraudulent purpose or to defeat the claims of other creditors of Albert B. Burnett. The obvious purpose, we think, was to obtain a lien upon all of the debtor's property, and not to assist him to cover up an interest therein and to prevent

the collection of the claims of other creditors. It is true that appellees did not ask the foreclosure of their mortgage in this action. It does not mature until 1929, and a mere election on their part to forbear foreclosure on account of the nonpayment of interest is not in itself fraudulent, nor is it of great probative value as tending to negative good faith on the part of the holders thereof in obtaining same.

We are of the opinion that the judgment and decree of the court below is fully sustained by the evidence. It is, accordingly, affirmed.—*Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.