GEORGE OELKE, Appellant, v. A. W. HOWEY et al., Appellees.

No. 40461.

OCTOBER 21, 1930.

*Batschelet & Vincent,* for appellant.

*W. D. Milligan,* for appellees.

*J. A. Graham,* for intervener.

GRIMM, J.—On January 17, 1928, A. W. Howey, widower, executed and delivered to his brother Frank Howey a deed to a 200-acre farm known as the northeast quarter and the northeast quarter of the northwest quarter of Section 29, Township 80 North, Range 33 West of the 5th P. M., in Guthrie County, Iowa, for a consideration recited in the deed as $25,500. The instrument also included certain personal property, consisting of small grain, corn, hay, farm machinery used upon said premises, 125 head of sheep, and 6 horses. The farm machinery included a tractor and two old threshing machines. This personal property was all on the 200-acre farm. It is the claim of both A. W. Howey and Frank Howey, his brother, that A. W. Howey, sometimes known as Al, owed Frank, at the time of the transfer, more than the value of the real estate and personal property.

On May 2, 1928, the plaintiff, George Oelke (appellant), obtained in the district court of Guthrie County, Iowa, a judgment against A. W. Howey for $5,499.16, with interest, together with attorney fees and costs. This judgment was based on four promissory notes given by Al Howey on April 6, 1927. On the same day, a general execution upon plaintiff's said judgment was issued, and was returned unsatisfied. The suit at bar was begun May 3, 1928. In September, 1928, A. W. Howey was adjudicated a bankrupt. On November 8, 1928, J. W. McGuire, as trustee in bankruptcy of A. W. Howey, filed his petition of intervention in this case. On December 14, 1928, A. W. Howey was granted a discharge in bankruptcy.

This action was tried in the district court on June 4, 1929, and on September 7, 1929, the trial court entered a judgment and decree, which contains, among other things, the following:

"That the court further finds, adjudges, and decrees that the equities are with the defendants, and that no fraud has been shown or established on the part of the defendants in making the deed from A. W. Howey to Frank Howey, conveying the northeast quarter and the northeast quarter of the northwest quarter of Section No. 29, in Township No. 80 north, Range 33 west of the 5th P. M., in Guthrie County, Iowa; and that there was justly due and owing to said Frank Howey and to his wife, Augusta Howey, from said A. W. Howey, at the time of the execution of the said deed, to wit, on the 17th day of January,

A. D. 1928, upon certain items of account, promissory notes, and mortgages, the total sum of $20,608.60, with all interest calculated thereon to said date, and that said A. W. Howey then and on said last-named date paid all of said indebtedness by the execution and delivery of said deed and the delivery of the real estate and personal property described therein, and that said personal property was then of the actual value of $1,500, and that said real estate was then of the actual value of $19,108.60.''

The decree quiets the title in Frank Howey, subject to $4,500 first mortgage thereon.

I. In substance, the errors relied upon for reversal are· First, that the court erred in finding that there was no fraud on the part of the defendant in making the conveyance in question; second, the court erred in finding due from A. W. Howey to Frank Howey a sum in excess of $20,000; third, complaint is made that the transfer was not set aside as being in fraud of creditors; fourth, objection is made to a certain clause in the decree providing for a sale of the property within a limited time, and the application of the proceeds to the payment of the indebtedness to Frank Howey, then to the appellant, and the balance, if any, to the trustee, intervener.

The legal propositions involved are well settled in this state. The difficulty arises in applying the principles to the facts of each particular case. We deem it unnecessary to discuss the legal propositions, and content ourselves with the mere statement of some of the holdings of this court.

As was said in *Commercial Sav. Bank v. McLaughlin*, 203 Iowa 1368:

''It is not sufficient for the attacking creditor to prove that the grantor intended, by the conveyance, to hinder and delay creditors, but it must also be shown that the grantee participated therein, or had knowledge of such facts as should have put him, as a reasonable person, on notice of the fraudulent purpose and intent of the grantor. *Botna Valley St. Bank v. Greig*, 190 Iowa 155; *Swanson Automobile Co. v. Stone*, 187 Iowa 309. A creditor may secure his claim, and in so doing receive a preference from his debtor, even though the debtor is insolvent; but the *bona fides* of the transaction must be shown. *Barks v. Kleyne*, 198

Iowa 793; *Kohn Bros. v. Clement, Morton & Co.,* 58 Iowa 589. The essential issue involves the fraudulent intent. Blood relationship between the parties is not *per se* a badge of fraud, although it strengthens the inference that arises from the circumstances, and requires strict proof of the consideration and the fairness of the transaction. *Barks v. Kleyne,* supra; *Hansen v. First Nat. Bank,* 197 Iowa 1101. Nor does the fact that the grantee accepted the deed with knowledge that her grantor had other creditors warrant a conclusive inference of fraud or fraudulent participation. A creditor, acting in good faith, may take security from his debtor even though he knows that there are other creditors, and the effect of the debtor's action will be to defeat *pro tanto* other creditors. *Halloran v. Halloran,* 195 Iowa 484; *Carlisle v. Milliman,* 199 Iowa 949; *Stroff v. Swafford Bros.,* 81 Iowa 695. * * * The preferring of one creditor is not *per se* evidence of fraud, although the effect of such a transaction would be to give one creditor a preference over others. *Farmers Loan & Tr. Co. v. Scheetz,* 196 Iowa 692; *Curie v. Wright,* 140 Iowa 651.''

In *Corn Belt Sav. Bank v. Burnett,* 203 Iowa 271, this court said:

''Mere suspicion of fraud is not sufficient to justify the setting aside of a conveyance at the suit of a creditor. *Urdangen & Greenberg Bros. v. Doner,* 122 Iowa 533; *Smyth v. Hall,* 126 Iowa 627; *Steinfort v. Langhout,* 170 Iowa 422. To justify such action, the evidence of the fraud alleged must be clear and satisfactory. *Ray v. Teabout,* 65 Iowa 157. It is conceded that Albert B. Burnett was insolvent at the time the mortgage was executed, and we think it fairly inferable from the record that appellees had knowledge thereof. The impression conveyed by the record is that the debtor desired to prefer certain of his creditors, and that he was actuated by this desire at the time the mortgage was executed; but this is immaterial if the creditors acted in good faith, and only for the purpose of securing their own claims. *Cox v. Collis,* 109 Iowa 270; *First Nat. Bank v. Eichmeier,* 153 Iowa 154; *Steinfort v. Langhout,* supra; *Carlisle v. Milliman,* 199 Iowa 949.''

In *First Nat. Bank v. Lynch,* 202 Iowa 795, this court said:

"The controlling principles of law are well settled. A creditor, acting in good faith, may take security from his debtor, or secure payment of his debt, although he knows that there are other creditors whose claims will thereby be defeated. Even knowledge on his part that the debtor is actuated by a fraudulent purpose is not sufficient to avoid the conveyance to him, if he acted in good faith and for the purpose of obtaining security for his debt, and not for the purpose of aiding the fraud. *Rosenheim v. Flanders,* 114 Iowa 291; *Steinfort v. Langhout,* 170 Iowa 422; *Ford v. Ott,* 182 Iowa 671; *Halloran v. Halloran,* 195 Iowa 484; *Grant v. Cherry,* 199 Iowa 164. Fraud will not be presumed from the mere showing of a tie of blood between the parties, although such relationship is a proper subject for consideration in the examination of such a transaction. *Farmers L. & Tr. Co. v. Scheetz,* 196 Iowa 692."

In *Wood Carriage & Auto Co. v. Cordle,* 201 Iowa 593, this court, quoting from *Grant v. Cherry,* 199 Iowa 164, said:

" 'In order to set aside a conveyance on the ground that it is fraudulent as against creditors, it must be shown that it was made by the grantor with intent to hinder and delay creditors. But a creditor, acting in good faith, may take security from his debtor or secure payment of his debt, although he knows that there are other creditors whose claims will thereby be defeated. And even knowledge on his part that the debtor is actuated by a fraudulent purpose is not sufficient to avoid the conveyance to him, if he acted in good faith and for the purpose of securing payment of his debt, and not for the purpose of aiding the fraud. *Rosenheim v. Flanders,* 114 Iowa 291; *Steinfort v. Langhout,* 170 Iowa 422; *Ford v. Ott,* 182 Iowa 671; *Halloran v. Halloran,* 195 Iowa 484. The insolvency of the grantor does not alone render his conveyance fraudulent. *Pieter v. Bales,* 126 Iowa 170; *Dickinson v. Davis,* 171 Iowa 29; *Keosauqua St. Bank v. Hartman,* 184 Iowa 961.' "

In *Barks v. Kleyne,* 198 Iowa 793, this court said:

"To assert successfully a demand by a creditor to set aside a conveyance given by his debtor in payment of or as security for a bona-fide debt, it must be established by clear and satisfactory proof, not only the insolvency of the debtor at the time

of the execution of the conveyance, and that the rights of other creditors were thereby impaired by the conveyance, but also (1) the intent of the debtor to hinder, delay, or defraud the creditors by the transaction, and (2) that the benefited creditor had knowledge of the fraudulent intent of his debtor and participated or co-operated therein, with the intent to hinder, delay, or defraud other creditors. *Harvey v. Phillips*, 193 Iowa 231; *Ratekin v. Droge Elev. Co.*, 190 Iowa 596."

See, also, *Shea v. Keith*, 200 Iowa 300; *Jordan v. Sharp*, 204 Iowa 11; *Stonewall v. Danielson*, 204 Iowa 1367; *First Nat. Bank v. Hartsock*, 202 Iowa 603; *Hogeboom v. Milliman*, 202 Iowa 817; *Hewitt v. Blaise*, 202 Iowa 1109; *Aldrich v. Van Hemert*, 205 Iowa 460; *Cover v. Wyland*, 205 Iowa 915.

With the principles thus announced in mind, we proceed to briefly discuss the facts in this case. The record, which is voluminous, has been very carefully examined. We will not undertake to set out or even discuss much of the evidence. We refer only to some of the facts which bear directly upon the contentions of the appellant.

These brothers had lived in the same locality for approximately 40 years, and they were still living as neighbors at the time of the trial. Prior to the transaction in controversy, they owned adjoining farms, and were on friendly terms. In the year 1909, A. W. Howey owned the 200-acre farm in controversy. He had lived on it for a considerable period of time. At that time, he bought what is known in the record as the "Kennedy" farm, consisting of 100 acres, located approximately one and one-half miles from the 200-acre farm. He also bought in the same year what is known in the record as the "Turner" farm. He contracted to pay what subsequently proved to be an exorbitant and unreasonable price for each of these farms. In the early part of 1920, he moved from the 200-acre farm to the "Kennedy" farm, and that same year, he gave a mortgage for $4,500 to an insurance company on the east 80 of the 200-acre farm. In July of that same year, he gave a note to his brother Frank Howey for $5,000, and a mortgage on the west 40 of the 200-acre tract, to secure the payment of the same. In September, 1924, A. W. Howey gave a note for $3,000 to his brother Frank Howey and a mortgage to secure the payment of same on a part of the 200-

acre farm. Various other notes were given to Frank Howey without security, as follows: June 28, 1918, $500; May 30, 1921, $1,000; September 25, 1924, $1,000; February 25, 1925, $1,500; March 30, 1925, $1,000; May 12, 1926, $1,000; September 28, 1926, $800; July 19, 1929, $600. There was also a book account from January 5, 1926, to March 25, 1927, showing $1,015 due from A. W. Howey to Frank Howey. The record also shows that various other sums were advanced. In some instances, notes were given and they were subsequently lost. At other times, no notes were taken.

Al Howey had plunged headlong into the Iowa land boom, and in consequence had become seriously involved. Frank Howey evidently had kept out of the boom. He had ready money. The unfortunate brother was in constant trouble, needing money to pay interest and taxes and other amounts due and pressing. Frank loaned him money, from time to time, to relieve his necessities, and this form of transaction continued during the years until finally Al was owing Frank what the trial court has figured up to be $20,608.90 for borrowed money. This account was paid off with $1,500 worth of personal property and the deed to the land in controversy, valued in the trial court's computation at $19,108.60. That the various amounts of money represented by these notes, this book account, and the other items referred to were actually paid to A. W. Howey by Frank Howey is definitely testified to by both of them. The only answer to this testimony on behalf of the plaintiff (appellant) is an attempt to show by inferences and various circumstances that these transactions between A. W. Howey and Frank Howey were not *bona fide,* and that A. W. Howey did not owe Frank Howey the amounts claimed to be due.

The appellant seeks to meet the definite testimony in the record concerning the indebtedness of Frank Howey and the evidences thereof by introducing the assessment rolls of Frank Howey for the years 1912 to 1928, both inclusive. It is claimed that, because Frank Howey did not return for assessment this indebtedness of Al Howey to him, therefore there was no such indebtedness. Manifestly, it was the duty of Frank Howey to return this indebtedness as moneys and credits; but it cannot be said that,

because he did not do so, therefore the indebtedness did not exist. We apprehend that it would create havoc in the commercial circles of this state, as conditions have obtained for many years, if it should be held that, because a note or other evidence of indebtedness has not been returned by the owner for taxation purposes, therefore the same is null and void. It is not necessary, in this proceeding, to furnish an excuse for Frank Howey for failing to make a proper return of his money and credits; but perhaps he may have, for a part of the time at least, questioned the value and collectibility of these notes and accounts. These assessment rolls introduced in this case are circumstances worthy of consideration, but they are not at all convincing, in face of the positive evidence in the case on behalf of the defendants.

In June, 1927, A. W. Howey, in seeking to secure further credit, made a financial statement in which he did not list any of his indebtedness to his brother Frank, and this circumstance is urged upon us as a reason for holding that there was no genuine indebtedness of A. W. Howey to his brother Frank. This also is a circumstance worthy of consideration. However, manifestly A. W. Howey was endeavoring to make the best possible showing he could, for the purpose of securing further credit. He was estimating the value of his land as high as he dared; he listed his indebtedness to the plaintiff Oelke, but evidently he did not deem it necessary to schedule his indebtedness to his brother Frank. Perhaps this was due to the fact that he felt and believed that Frank would not then press him for the indebtedness. At all events, the mere fact that he did not, on that occasion, schedule his indebtedness to his brother Frank is not persuasive, in the face of the definite testimony in the record in support of the indebtedness.

After the transfer in controversy, Al Howey continued to use a portion of the land as the tenant of Frank Howey. A close scrutiny of the record on this point leads to the conclusion that there was nothing done in this connection having any significant bearing on the vital question in this case. The same is true in reference to the transaction between the parties in reference to the personal property sold at the time the land was conveyed.

Numerous witnesses were called as to the value of the 200 acres of land in controversy. These estimates range, on the part

of the appellant; from $120 to $130 an acre, and on behalf of the defendants, from $75 to $90 an acre. The trial court found the land to be worth $19,108.60, which is in excess of $95 per acre.

There is nothing in this record to warrant the conclusion that Frank Howey accepted this conveyance with any intention to hinder and delay creditors, or to operate a fraud on anyone. On the other hand, the record clearly and satisfactorily shows that Frank Howey accepted the land and personal property in payment of a debt then due and owing from Al Howey. The burden was on the plaintiff, upon every essential element in his action. He has failed to successfully carry the burden. Applying each and all of the rules of law established in this state, and hereinbefore quoted, to the facts in this case, we are abundantly satisfied that the trial court was correct in its ruling in refusing to set aside the conveyance.

Exception is taken to that portion of the decree which provided for the sale of the land within one year from the date of the decree and the application of the proceeds of the sale, the payment of the indebtedness of Frank Howey, and the balance to J. W. McGuire, trustee in bankruptcy and intervener. The defendants (Howeys) have not appealed from this order. The appellant is in no position to complain in relation thereto. It would unduly extend this opinion to dwell in detail upon the evidence in this case, and further discussion would be of no value to bench or bar. Upon the whole record, we are abundantly satisfied with the holding of the lower court, and therefore the case must be, and is,—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.